# Exhibit A



# CONDITION OF ENTRY
# METRA COMMUTER OPERATIONS

This **PASSENGER RAIL CONDITION OF ENTRY** (herein "COE" or "Agreement") is effective on 1st *day of July 2025* **("Effective Date")** to set the terms and conditions for the COMMUTER RAIL DIVISION of the Regional Transportation Authority Act ("Metra" or "CRD" or "Passenger Agency") condition of entry to use certain property of UNION PACIFIC RAILROAD COMPANY, a Delaware corporation ("Union Pacific" or "UP" or "Railroad") to provide passenger rail service. Metra and Union Pacific may be individually referred to as a "Party," and jointly referred to as the "Parties."

## PASSENGER RAIL CONDITION OF ENTRY TERMS AND CONDITIONS

### Section 1. DEFINED TERMS

**Section 1.1** "*Claim*" shall have the meaning as set forth in Section 9.

**Section 1.2** "*Confidential Information*" means any information delivered to either Party (the "Receiving Party") by or on behalf of the other Party (the "Providing Party") that: (a) is proprietary, privileged, or confidential in nature; and or (b) was visibly marked, labeled, or otherwise adequately identified as such when provided to the Receiving Party. Notwithstanding the foregoing, Confidential Information does not include information that: (i) was publicly known or otherwise known to the Receiving Party prior to the time of such disclosure; (ii) subsequently becomes publicly known through no act or omission by the Receiving Party or any person acting on the Receiving Party's behalf; or (iii) constitutes financial statements that are otherwise publicly available; or (iv) is independently developed by the Receiving Party without reliance on or reference to the Providing Party's Confidential Information; (v) is rightfully received by the Receiving Party from a third party that is not under any obligation to keep such information confidential; or (vi) is approved for release by the Providing Party in writing.

**Section 1.3** "*Designated Operator"* means a legal entity designated by Metra and authorized and approved by Union Pacific, at its sole discretion and in writing, to be responsible for the control, management, and operation of Metra's trains on Union Pacific Rail Lines. As of the Effective Date, Metra is the Union Pacific-approved Designated Operator.

**Section 1.4** "*Force Majeure Event(s)*" means: (a) governmental orders, laws, actions, or pronouncements of local, regional or national emergencies that impair Union Pacific's performance under this COE; (b) terrorist threats, acts, or explosions of any kind; (c) riots, insurrection, war, terror, occupation, coup, or civil unrest; (d) picket lines, strikes, labor stoppages or slowdowns, or lockouts by third parties providing labor, material, or services under contract to a Party, or other occurrences that make a Party unable to procure critical materials despite commercially reasonable efforts to procure such materials; (e) derailments, wrecks, freight embargoes or blockades, or unforeseen catastrophic railroad emergencies anywhere on or adjacent to rail lines; (f) pandemic outbreaks of communicable diseases or other public health emergencies; (g) acts of God, earthquakes, fires, explosions, floods, cloudbursts, tornados, or other natural phenomena beyond the power of a Party to reasonably foresee or to make preparation in defense against, but not including rain, windstorm, or other natural phenomena of normal intensity based on U.S. Weather Bureau reports for the particular locality and for the particular season of the year in which the work is being performed; or (h) other events beyond the reasonable control of the impacted Party.

**Section 1.5** "*Government Requirements*" means any order, ordinance, regulation, standard, statute, or other obligation imposed by any governmental body with jurisdiction over the relevant area or activity and/or the Parties.

**Section 1.6** "*Insurance Requirements*" shall have the meaning as set forth in Section 10.

**Section 1.7** "*Operator Requirements*" shall have the meaning as set forth in Section 6.

**Section 1.8** "*Providing Party*" shall have the meaning as set forth in Section 1.2.

**Section 1.9** "*Rail Line*" means Union Pacific's main track, main-track-proximate appurtenances (e.g., ballast, bridges, pocket tracks, rail and fastenings, siding and connecting tracks, signal equipment, signals, switches, and ties.), and underlying subgrade-land for the Union Pacific's Geneva (mile post 0 to mile post 44), Harvard (mile post 0 to mile post 63), Kenosha (mile post 0 to mile post 52) and McHenry (mile post 58.2 to mile post 65.8) subdivisions.  Rail Line excludes all other properties such as stations and parking lots. Access to industry and yard tracks e.g., non-main tracks, including mechanical facility yard tracks, require separate agreements.

**Section 1.10** "*Railroad Activities*" means, collectively, (a) the performance of construction, maintenance, or repair of Rail Lines; (b) the construction, maintenance, and repair of highways, utility lines, or other public works that cross or are adjacent to Rail Lines; or (c) any other activities or situations as may arise.

**Section 1.11** "*Railroad Indemnified Parties*" shall have the meaning as set forth in Section 9.

**Section 1.12** "*Railroad Requirements*" means the rules, regulations, standards, and requirements established or modified by Union Pacific from time to time.

**Section 1.13** "*Receiving Party*" shall have the meaning as set forth in Section 1.2.

**Section 1.14** "*Rolling Stock*" means all locomotives, carriages, wagons, or other passenger rail vehicles used on Rail Lines.

**Section 1.15** "*Special Trains*" means a Train that is operated on an occasional, seasonal or non-regular basis such as Ravinia and NASCAR.

**Section 1.16** "*Specified Claim*" shall have the meaning as set forth in Section 9.

**Section 1.17** "*Term*" means as of the Effective Date through July 1, 2026, unless terminated accordance with the provisions of this COE.

**Section 1.18** "*Train*" means a series of connected passenger rail vehicles used to transport Metra passengers on the Rail Line. Such vehicles include locomotives, cars, and all other Rolling Stock.

## Section 2. ACCESS TO RAILROAD RAIL LINES

**Section 2.1 Access to Railroad Rail Lines**. Union Pacific grants Metra a non-exclusive, revocable limited license to access and operate trains on Rail Lines during the Term, subject to Union Pacific's reserved rights and these terms and conditions. Metra may operate trains on the Rail Line according to the officially published commuter train service schedule as of the Effective Date. Each train consist operated by Metra shall not exceed 1,100 feet in length. This license is contingent upon Metra's compliance with all applicable laws, regulations, and agreements governing such operations. The license does not constitute an interest in real property.

**Section 2.2 Rolling Stock**. Metra's Rolling Stock must meet Government Requirements and Railroad Requirements including the requirement that Rolling Stock equipment must properly shunt to activate Union Pacific's signal system (e.g., automatic crossing warning device).

**Section 2.3 Service Changes of Train Schedules and Consists**. Union Pacific has no obligation to permit the operation of additional Trains, route changes, schedule changes, consist changes, improvements, enhancements, or any other changes.

**Section 2.4 Discontinuation and Modification of Service**. If a Train is suspended for a period of more than thirty (30) consecutive days, such Train shall be deemed discontinued, and Metra will no longer have the right to the COE for that Train unless Union Pacific expressly agrees in writing to reinstate the COE.

## Section 3. COMPENSATION, COST REIMBURSEMENT, AND OTHER EXPENSES

**Section 3.1 Rail Access Fee**. Metra shall pay $18.50 per train mile operated on the Rail Lines.  The rail access fee rate shall increase 2.9% annually each January 1st.

**Section 3.2 Engineering, Dispatching, Crew Calling and Timekeeping**. The expenses incurred by Union Pacific in connection with engineering, dispatching, crew calling, timekeeping, and other operational activities shall be calculated based on the actual labor charges attributable to the Union Pacific's employees who are engaged in commuter operation roles or are rendering support or services for the facilitation of Metra's operations.  This calculation shall include the costs of materials and other related expenditures. The aggregate amount of these expenses is subject to modification contingent upon the following factors: (a) alterations in labor and material rates; (b) adjustments in the number of required positions; (c) variations in the duration of time allocated to the provided service; and (d) additional pertinent factors. Both direct costs and associated costs shall be recognized as reimbursable expenses.

**Section 3.3 Other Expenses and Costs**.  Other costs, including taxes and logistical transportation expenses for materials, shall be allocated and invoiced to Metra based on its respective train miles operated over the Rail Line, or by an alternative method determined by Union Pacific.

**Section 3.4 Special Trains**.  Metra may submit a written request to Union Pacific for Special Trains. Upon receipt of such a request, Union Pacific shall issue a written response within thirty (30) days. If the request is approved, the Parties shall enter into a separate agreement that clearly defines and establishes the terms and conditions for the Special Train.

**Section 3.5 Billing and Monthly Payment**.  Metra shall pay all invoices within five (5) days of receipt of a billing statement from Union Pacific. Union Pacific reserves the right to adjust future billing statements to correct errors or to include previously omitted items.

**Section 3.6 Overdue Payments**.  All unpaid sums of money due and payable by Metra to Union Pacific shall accrue interest at the greatest of: (a) the maximum percentage permitted under Illinois law; (b) six percent (6%) per annum; or (c) the Prime Rate plus two percentage points, based on the Prime Rate published in the Money Rates section of the Wall Street Journal on the due date. Interest shall begin to accrue thirty (30) days after the payment due date.

**Section 3.7 Billing Disputes**.  The existence or pendency of any dispute under this COE shall not, under any circumstances, exempt, suspend, or modify Metra's payment obligations as stipulated in this COE. Metra is required to fulfill any and all payment obligations promptly and in full, irrespective of any disputes.

### Section 4. MAINTENANCE OF RAIL LINES AND STRUCTURES

**Section 4.1 Maintenance of Rail Lines**. Subject to Sections 4.4 and 4.5 below, Union Pacific shall maintain the Rail Lines in accordance with the standards necessary to maintain the schedules as of the Effective Date. The maintenance of Rail Lines shall also include regular inspection of tracks, signal equipment, and structures as prescribed by Government Requirements and Railroad Requirements.

**Section 4.2 Maintenance of Signal and Communications**. Union Pacific's signal and communications systems shall be maintained in accordance with applicable Government Requirements and Railroad Requirements.

**Section 4.3 Other Maintenance and Government Requirements**. All maintenance performed under Sections 4.1 and 4.2 are reimbursable costs as described in Section 3.

**Section 4.4 Capital Expenditures**. Metra is responsible for capital expenditure needed for the Rail Lines, including costs associated with acquisition, construction, modification, renewal, replacement, and installation, or permanent improvement. If Metra fails to provide any capital expenditure needed for the Rail Lines, in Union Pacific's reasonable judgment, then Metra shall adjust its operations on the Rail Lines as needed to adapt to the condition of the Rail Lines.

**Section 4.5 Restoration of Rail Lines**. In the event of a casualty or catastrophic service interruption, including but not limited to bridge failures, roadbed collapses, and tunnel collapses, Union Pacific shall decide in its sole discretion on whether to restore the Rail Line or any subsection thereof. In the event Union Pacific elects to undertake the restoration of the Rail Line, or any subsection thereof, the costs associated with such restoration shall be apportioned and invoiced to the parties in accordance with their respective train miles operated over the affected Rail Line, or subsection thereof, during the twelve (12) month period immediately preceding the commencement of the month in which the casualty or catastrophic event occurs. In the event the Union Pacific determines not to restore the Rail Line or subsection thereof, Metra may elect to fund the restoration at its sole cost.

**Section 4.6 Notice and Accommodation of Railroad Activities**. Union Pacific shall use reasonable efforts to provide Metra with notice of scheduled Railroad Activities no later than fourteen (14) days prior to the beginning of Railroad Activities. Such a notice shall be in writing and sufficiently describe the Railroad Activities (e.g., date, location, and, if practicable, the hours). Such notice is merely informative and does not bind Union Pacific to conduct Railroad Activities according to the schedule in the notice, nor does it grant Metra any right to object to Railroad Activities for which fourteen (14) days' notice is not given. Such notice need not be provided in the event of an emergency. Regardless of whether Union Pacific was able to provide such notice, Metra shall provide temporary accommodation in its routes, schedules, or consists for the purpose of minimizing interference with Railroad Activities. Metra shall be solely responsible for all the costs and expenses it incurs to accommodate the Railroad Activities.

## Section 5. PROPERTY OF RAILROAD

**Section 5.1 No Rights in Union Pacific's Real Property**. Notwithstanding anything to the contrary, nothing in this COE grants Metra any rights in any real property owned, leased, licensed, or otherwise used by Union Pacific.

**Section 5.2 Access onto Rail Lines or Other Railroad Property for Work**. Prior to Metra accessing, or having its contractors access, Rail Lines or other property of Union Pacific in order to perform any work on any property of Union Pacific, or other property adjacent to Rail Lines, Metra shall, and shall cause its contractors to, enter into a right of entry agreement with Union Pacific.

**Section 5.3 No Warranty of Title; DISCLAIMER**. WITH RESPECT TO RAIL LINES OR ANY OTHER RAILROAD PROPERTY, UNION PACIFIC MAKES NO COVENANT OR WARRANTY OF TITLE OR QUIET POSSESSION OR AGAINST ENCUMBRANCES.  RAIL LINES AND ALL OTHER PROPERTY OF UNION PACIFIC ARE PROVIDED AS-IS, WHERE-IS, WITHOUT WARRANTIES, EXPRESS OR IMPLIED, INCLUDING, BUT NOT LIMITED TO, ANY IMPLIED CONDITIONS OR WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR USE OR PURPOSE, ANY IMPLIED WARRANTY ARISING FROM TRADE USAGE, COURSE OF DEALING OR COURSE OF PERFORMANCE, AND ANY AND ALL OTHER WARRANTIES OR OBLIGATIONS ARE HEREBY EXPRESSLY DISCLAIMED.

**Section 5.4 Condition of Access Granted Subject to Outstanding Rights**. The COE granted to Metra by Union Pacific is subject to: (a) any existing encumbrances and rights (whether public or private), recorded or unrecorded, and any renewals thereof, and (b) the rights of any other railroads to operate on Rail Lines, whether existing as of the date hereof or granted by Union Pacific in the future, provided that the operations of any such railroad shall be reasonably coordinated with Metra's operations. If any property or rights other than the rights hereby granted are necessary for the operation of Trains on Rail Lines, Metra shall acquire all such other property and rights at its own expense and without expense to Union Pacific, and no such need or expense by Metra shall reduce any amounts payable by Metra to Union Pacific.

**Section 5.5 No Interference**. Metra shall not damage, destroy, or interfere with the property or rights of nonparties in, upon, or relating to Union Pacific's property, unless Metra at its own expense settles with and obtains releases from such nonparties, and all such expenses shall be subject to indemnification by Metra in accordance with Section 9.  Union Pacific reserves the right to use and to grant to others the right to use Rail Lines for any purpose not inconsistent with the COE, including, but not limited to, the right to construct, reconstruct, maintain, operate, repair, alter, renew, and replace tracks, facilities, and appurtenances on the property, to cross Rail Lines with all kinds of equipment, and to grant other persons or entities the right to operate passenger trains on Rail Lines.

**Section 5.6 Taxes or Assessments**. To the extent any entity imposes any tax or assessment of whatever kind on the COE granted to Metra or the amounts paid by Metra to Union Pacific, Metra shall assume, bear, and pay all such taxes and assessments or, if paid by Union Pacific, reimburse Union Pacific for any such taxes or assessments, in addition to all other sums payable to Union Pacific by Metra.

## Section 6. DESIGNATED OPERATOR

**Section 6.1 Designated Operator**. Nothing herein shall be construed to limit or waive the rights of the Union Pacific to seek indemnification or damages from Metra for the actions of a Designated Operator or another person or entity acting on Metra's behalf.

**Section 6.2 Railroad's Approval of Designated Operator**. No Designated Operator may perform any action on any Rail Line without the express written approval of Union Pacific. Union Pacific may approve or reject any proposed Designated Operator at Union Pacific's sole discretion. Designated Operator shall have no rights with respect to this COE. While Union Pacific has sole discretion to approve any proposed Designated Operator, Union Pacific shall not be liable for any actions indirectly or directly relating to or regarding any proposed Designated Operator.

**Section 6.3 Designated Operator Profile**. The Designated Operator must: (a) be operationally capable of safely performing Metra's obligations under this COE ; (b) meet all state, federal, and Union Pacific safety and operational protocols, including but not limited to 49 C.F.R. Part 239 "Passenger Train Emergency Preparedness"; (c) be qualified under the General Code of Operating Rules; (d) require employees to obtain and maintain applicable Federal Railroad Administration certifications, licenses, and fulfill other necessary requirements; (e) be financially viable; and (f) not be a freight Class I railroad or a wholly directly or indirectly owned subsidiary of a freight Class I railroad; (g) ensure equipment utilized in the rail passenger service operations meets Government and Railroad Requirements, including but not limited to the requirement that rolling stock equipment must properly shunt to activate Union Pacific's signal system (e.g., automatic crossing warning device); and (h) not perform any action that would cause Railroad to fall under the jurisdiction of the STB or any other entity for the purpose of 49 U.S.C. § 24308 or any other section within Chapter 243 ("Operator Requirements"). Union Pacific reserves the right, in its sole discretion, to remove the Designated Operator or restrict its operations or take any action it deems reasonable, if the Designated Operator fails to comply with the Operator Requirements.

## Section 7. RAILROAD CONTROL AND INSTRUCTIONS

**Section 7.1 Dispatching Control**. The movement of Trains over and along Rail Lines shall be subject to the exclusive direction and control of Union Pacific. Union Pacific shall use reasonable efforts to minimize disruption of Metra's schedules.

**Section 7.2 Railroad Control and Instruction**. All Metra or Designated Operator personnel rendering any service in connection with the handling or movement of any

Train while on Rail Lines shall comply with any and all operating rules, timetables, and instructions of Union Pacific.

**Section 7.3 Persons Prohibited or Removed**.  Union Pacific may prohibit any person from performing services pursuant to this COE.  In connection with such prohibition, Union Pacific may remove any person from Rail Lines or any other Union Pacific property.  Reasons for such prohibition and/or removal including, but are not limited to, safety concerns or misuse of the Union Pacific's intellectual properties.

### Section 8.  COMPLIANCE WITH REGULATIONS AND RULES

**Section 8.1 Regulation and Rules**.  Metra shall comply with: (a) all applicable Government Requirements and Railroad Requirements, including those relating to the operation, maintenance, condition, inspection, testing, or safety of Trains and other equipment on Rail Lines; (b) the General Code of Operating Rules and any successor published by the American Association of Railroads; (c) Union Pacific's timetables, general orders, bulletins, and other standards as established and modified from time to time; and (d) applicable permit requirements, environmental or otherwise.

**Section 8.2 Environmental Compliance**.  Metra shall use Union Pacific's property and all activities performed upon the property in accordance with all Government Requirements relating to environmental matters, including, without limitation, all applicable laws pertaining to the protection of the environment (e.g., prevention of pollution and remediation of contamination) and human health and safety, including, without limitation, the Clean Air Act, 42 U.S.C. § 7401 et seq.; the Clean Water Act, 33 U.S.C. § 1251 et seq.; the Oil Pollution Act of 1990, 33 U.S.C. § 2701 et seq.; the Marine Protection, Research, and Sanctuaries Act, 33 U.S.C. § 1401 et seq.; the National Environmental Policy Act, 42 U.S.C. § 4321 et seq.; the Noise Control Act, 42 U.S.C. § 4901 *et seq*.; the Occupational Safety and Health Act, 29 U.S.C. § 651 et seq.; the Resource Conservation and Recovery Act, 42 U.S.C. § 6901 et seq., as amended by the Hazardous and Solid Waste Amendments of 1984; the Safe Drinking Water Act, 42 U.S.C. § 300f *et seq*.; the Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. § 9601 *et seq*., as amended by the Superfund Amendments and Reauthorization Act; the Emergency Planning and Community Right-to-Know Act, 42 U.S.C. § 11001 *et seq*.; the Toxic Substances Control Act, 15 U.S.C. § 2601 *et seq*.; the Hazardous Materials Transportation Act, 49 U.S.C. § 1801 *et seq*.; the Atomic Energy Act, 42 U.S.C. § 2011 *et seq*.; and the Nuclear Waste Policy Act of 1982, 42 U.S.C. § 10101 *et seq*.; and all analogous applicable state and local laws and regulations and subsequent amendments and or updates (collectively, the "Environmental Laws").

### Section 9.  INDEMNIFICATION AND LIABILITY

**Section 9.1 Metra's Indemnification of Union Pacific in General.  TO THE MAXIMUM EXTENT ALLOWED UNDER APPLICABLE LAW, METRA ASSUMES LIABILITY FOR AND AGREES TO INDEMNIFY, DEFEND, AND SAVE HARMLESS**

**RAILROAD INDEMNIFIED PARTIES FROM AND AGAINST ANY AND ALL CLAIMS INCLUDING BUT NOT LIMITED TO (A) ENVIRONMENTAL CLAIMS, (B) CLAIMS OF VICARIOUS LIABILITY, AND (C) PERSONAL INJURY CLAIMS BY ANY PERSON, INCLUDING UNION PACIFIC EMPLOYEES, FOR LOSS, DAMAGE, PERSONAL INJURY, DEATH, DAMAGE TO PROPERTY (INCLUDING BUT NOT LIMITED TO DAMAGE TO INFRASTRUCTURE) AND EQUIPMENT, COST OR EXPENSE (INCLUDING COSTS OF INVESTIGATION, ATTORNEY FEES, CONSULTANT FEES, EXPERT FEES, COURT COSTS, AND COSTS INCURRED IN ENFORCING THESE INDEMNIFICATION PROVISIONS), FINE, PENALTY, SETTLEMENT, OR JUDGMENT OF WHATEVER KIND OR NATURE, WHERE SUCH HARM ARISES FROM, RELATES TO, OR IS IN CONNECTION WITH METRA'S SERVICE PROVIDED PURSUANT TO THIS AGREEMENT, OR RELATED TO THE ACTION, INACTION, OR OMISSION OF METRA, ITS EMPLOYEES, CONTRACTORS, VENDORS, VOLUNTEERS, INVITEES, DELEGATES, REPRESENTATIVES, OR AGENTS, ("CLAIM OR CLAIMS"). FOR PURPOSES OF THIS AGREEMENT, RAILROAD INDEMNIFIED PARTIES IS DEFINED TO INCLUDE THE FOLLOWING: UNION PACIFIC AND ITS AFFILIATES, SHAREHOLDERS, OFFICERS, EMPLOYEES, SUCCESSORS, ASSIGNS. RAILROAD INDEMNIFIED PARTIES ALSO INCLUDES DESIGNATED AGENTS AND REPRESENTATIVES WHERE, BECAUSE OF THE ABSENCE OF INSURANCE, ABSENCE OF AN INDEMNITY AGREEMENT, OR INADEQUATE INSURANCE OR INDEMNITY PROTECTION, SUCH AGENT'S ACTS OR OMISSIONS WOULD OTHERWISE RESULT IN LIABILITY TO UNION PACIFIC. (COLLECTIVELY, "RAILROAD INDEMNIFIED PARTIES") TO CLARIFY, METRA IS NOT ASSUMING LIABILITY FOR OR AGREEING TO INDEMNIFY, DEFEND, OR SAVE HARMLESS UNION PACIFIC FOR INCIDENTS THAT DO NOT INVOLVE A METRA TRAIN, METRA SERVICES OR EQUIPMENT OR METRA CONTRACTOR SERVICES OR EQUIPMENT.**

**SECTION 9.2 Metra's Indemnification of Union Pacific Specifically. WITHOUT LIMITING OR MODIFYING THE OBLIGATIONS OF METRA UNDER SECTION 9.1 OF THIS AGREEMENT, METRA AGREES TO INDEMNIFY, DEFEND, AND SAVE HARMLESS RAILROAD INDEMNIFIED PARTIES FROM AND AGAINST ANY LIABILITY: (A) IRRESPECTIVE OF WHETHER THE LIABILITY IS VICARIOUSLY IMPLIED IN LAW, STRICT, OR IS A RESULT OF A RAILROAD INDEMNIFIED PARTY'S OWN NEGLIGENCE; (B) CAUSED AS A RESULT OF A COLLISION OF A VEHICLE OR A PERSON WITH A METRA TRAIN; (C) CAUSED AS A RESULT OF VAGRANTS AND TRESPASSERS USING METRA FACILITIES; (D) INCURRED IN CONNECTION WITH THE USE OR PRESENCE OF A TAXI OR OTHER ARRANGED TRANSPORTATION SERVICE PROVIDING TRANSPORTATION TO OR ADJACENT TO THE AREAS DELINEATED IN SECTION 1.6; (E) CAUSED BY ANY LOCOMOTIVE, PRIVATE RAIL CAR, PASSENGER CAR, OR ANY OTHER PROPERTY OR EQUIPMENT OWNED BY, LEASED TO, USED BY, OR OTHERWISE IN THE CONTROL, CUSTODY, OR POSSESSION OF EITHER METRA OR UNION PACIFIC; (F) ARISING OUT OF, CAUSED BY, OR IN ANY MANNER RESULTING FROM A COLLISION WITH OR DERAILMENT OF A METRA OWNED OR OPERATED PASSENGER TRAIN; OR (G) ARISING FROM, CAUSED BY, OR IN**

**ANY MANNER RESULTING FROM ANY SPILL, RESPONSE, MITIGATION, CLEANUP, OR DISPOSAL OF FUEL, OIL, OR OTHER POLLUTANT ARISING FROM, RELATED TO, OR IN CONNECTION WITH METRA'S OR ITS CONTRACTORS ACTIVITIES UNDER THIS AGREEMENT.**

**Section 9.3 Metra's Obligation to Defend Union Pacific**. Union Pacific shall give written notice to Metra of the receipt or pendency of any claim for which Metra is liable or potentially liable to indemnify and save harmless the Railroad Indemnified Parties pursuant to the terms of this COE ("Specified Claims"). For such Specified Claims, Metra shall, at its own cost and expense and without any cost or expense to the Railroad Indemnified Parties, defend the suit and indemnify and save harmless the Railroad Indemnified Parties against all costs and expenses pursuant to the terms of this COE. Union Pacific will use commercially reasonable efforts to give to Metra information relating to each such claim to the extent reasonably necessary and will cooperate in good faith in the defense of any such claim. Metra agrees that it will not settle any claim in any manner that would impose any expense, penalty, obligation, or limitation on any Railroad Indemnified Party without the impacted Railroad Indemnified Party's prior written consent to the specific and fully disclosed expense, penalty, obligation or limitation.

**Section 9.4 Union Pacific's Right to Defend Itself**. Notwithstanding anything in this COE to the contrary, Union Pacific has the right, but not the obligation, upon notice to Metra, to defend any claim against a Railroad Indemnified Party, to select counsel to defend any Railroad Indemnified Party against that claim and to control the defense and settlement of that claim as against the Railroad Indemnified Party. If Union Pacific opts to do this, Metra will nonetheless be obligated to protect, indemnify and save harmless each Railroad Indemnified Party from and against all such claims to the extent the Metra is obligated to do so under this COE. Such expenses and settlement shall be fair and reasonable.

**Section 9.5 Severability Related to Liability**. In addition to any other provision of this COE, in the event that all or any portion of this Section 9 is deemed to be unenforceable for any reason, the parties agree that Metra will still indemnify and hold harmless Union Pacific to the fullest extent allowed by applicable law, and only the portion of any offending language that renders unenforceable any portion of this Section 9 will be stricken.

**Section 9.6 Survival of Indemnity Obligation**. The obligations outlined in Section 9 shall survive any termination of this COE including, but not limited to, termination by performance, implied-in-fact agreements, course of dealing, or otherwise.

**Section 10. MAINTENANCE OF INSURANCE**

**Section 10.1 Insurance Requirements**. Metra shall keep in full force and effect insurance coverage that provides the same insurance coverages in amounts not less than the insurance Metra has in effect as of June 30, 2025 (as illustrated in Exhibit A),

and all policies must include Union Pacific as an additional insured, providing Union Pacific the broadest possible coverage available by operation of law and coverage not limited by Metra's liability under the indemnity requirements. This obligation to maintain insurance coverage applies regardless of (a) any monetary caps on Metra's liability or limitations on Metra's liability to others under any state or federal law; or (b) any immunity from liability provided to Metra under any state or federal law.

**Section 10.2 Punitive Insurance**. Metra must maintain coverage for punitive damages, unless: (a) insurance coverage may not lawfully be obtained for any punitive damages that may arise under this COE; or (b) all punitive damages are prohibited by all states in which this COE shall be performed. (collectively Sections 10.1 and 10.2, "Insurance Requirements")

**Section 10.3 Survival of Insurance Obligation**. The Insurance Requirements shall survive any termination of the COE, including, but not limited to, termination by performance, implied-in-fact agreements, course of dealing, or otherwise.

## Section 11. TERMINATION

**Section 11.1 Termination**. In the event of a breach of the terms of this COE, Union Pacific shall have the right to terminate the COE effective sixty (60) days' after providing written notice to Metra. Metra shall undertake all necessary actions to remedy and cure the identified breach(es) within thirty (30) days of the notice. Under no circumstances shall Metra's opportunity to cure exceed sixty (60) days from the issuance date of the original termination notice. Should Metra fail to remedy and cure the breach(es) within the cure period to the satisfaction of Union Pacific in its sole discretion, the COE will be deemed terminated on the termination date set forth in the notice without need for further action by Union Pacific.

**Section 11.2 Modification**. This COE shall not be modified, amended, or altered without Union Pacific's written consent.

## Section 12. GENERAL TERMS

**Section 12.1 Confidentiality**. The Receiving Party shall maintain the confidentiality of Confidential Information, except that the Receiving Party may deliver or disclose Confidential Information to: (a) its directors, officers, employees, agents, attorneys, and affiliates to the extent such disclosure reasonably relates to the administration of the transactions contemplated by this COE; (b) its financial advisors and other professional advisors who agree to hold confidential the Confidential Information substantially in accordance with the terms of this Section; (c) any federal or state regulatory authority having jurisdiction over the Receiving Party pursuant to legal requirements or a court order; and (d) any other person or entity to whom such delivery or disclosure may be necessary or appropriate: (1) to effect compliance with any Government Requirement applicable to the Receiving Party; (2) to respond to any subpoena or other legal process; (3) in connection with any litigation or dispute to which the Receiving Party is a party; or (4) to enforce or protect the Receiving Party's rights and remedies.

**Section 12.2 Force Majeure Events**. Notwithstanding anything to the contrary, each Party shall be temporarily excused from the performance of any of its obligations under the COE, except obligations involving indemnification, maintenance of insurance, or the payment of money to the other Party, during the time when such nonperformance is caused by a Force Majeure Event. In all cases, the Party asserting a Force Majeure Event as the basis for temporary excuse from performance must, as soon as practicable after learning of the conditions related to the Force Majeure Event, provide written notice of the Force Majeure Event to the other Party. The notice must explain the nature of the Force Majeure Event, what obligations it affects, the date the Force Majeure Event arose, and an estimate of how long the Force Majeure Event shall interfere with the noticing Party's ability to perform its obligations. The Party claiming an excuse from performance must promptly resume full performance of its obligations upon recovery from or cessation of the Force Majeure Event.

**Section 12.3 Governing Law**. The COE shall be governed by and construed in accordance with the laws of the State of Illinois without regard to its conflict of law rules. Nothing herein constitutes a waiver of principles of legal preemption or preclusion that may apply to Union Pacific because of its status as an interstate rail carrier regulated by the federal government.

**Section 12.4 Venue**.  To the fullest extent permitted by law, any dispute arising under or in connection with this COE or related to any subject matter which is the subject of this COE shall be subject to the sole and exclusive jurisdiction of the United States District Court for the Northern District of Illinois, or, if such court lacks subject matter jurisdiction, then the Circuit Court of Cook County, Illinois. The choice of venue is intended by the passenger agency and railroad to be mandatory and not permissive. Metra and Union Pacific each hereby irrevocably consents to the jurisdiction of the United States District Court for the Northern District of Illinois in any such dispute and irrevocably waives, to the fullest extent permitted by law, any objection that it may now have or hereafter have to the laying of venue in such court(s) and that any such dispute which is brought in such court(s) has been brought in an inconvenient forum.
.
**Section 12.5 Waiver of Jury Trial**.  IN ANY ACTION, SUIT, OR PROCEEDING IN ANY JURISDICTION BROUGHT BY ANY PARTY AGAINST ANY OTHER PARTY ARISING OUT OF OR RELATING TO THIS AGREEMENT, THE PARTIES EACH KNOWINGLY AND INTENTIONALLY, TO THE GREATEST EXTENT PERMITTED BY APPLICABLE LAW, HEREBY ABSOLUTELY, UNCONDITIONALLY, IRREVOCABLY AND EXPRESSLY WAIVES FOREVER TRIAL BY JURY.

**Section 12.6 Metra Is Bound by These Terms and Conditions Upon Entry**.  Upon the first Metra train accessing Union Pacific's Rail Lines on July 1, 2025, at or after 00:01 AM CT, Metra shall be bound by these terms and conditions of entry. Upon any request by Metra for track authorization or occupancy to operate its trains on Union Pacific's Rail Lines—for example, by contacting Union Pacific's Harriman Dispatching

Center, Lake Street Tower operator, or Union Pacific's Crew Management for train or crew operations—Metra shall be bound by these terms and conditions of entry.

**Exhibit A – INSURANCE POLICY AND REQUIREMENTS**

# ACORD® CERTIFICATE OF LIABILITY INSURANCE

DATE (MM/DD/YYYY): 11/19/2024

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. THIS CERTIFICATE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE CERTIFICATE HOLDER.

IMPORTANT: If the certificate holder is an ADDITIONAL INSURED, the policy(ies) must have ADDITIONAL INSURED provisions or be endorsed. If SUBROGATION IS WAIVED, subject to the terms and conditions of the policy, certain policies may require an endorsement. A statement on this certificate does not confer rights to the certificate holder in lieu of such endorsement(s).

**PRODUCER**: Arthur J. Gallagher Risk Management Services, LLC, 2003 Tower Drive, Monroe LA 71201

**CONTACT NAME**: Lisa Cleveland
**PHONE (A/C, No, Ext)**: 318-537-8390
**E-MAIL ADDRESS**: lisa_cleveland@ajg.com

**INSURER(S) AFFORDING COVERAGE**:
- INSURER A: XL Catlin Insurance Company UK Limited
- INSURER B: MSIG Specialty Insurance USA Inc. — NAIC# 34886

**INSURED**: Northeast Illinois Regional Commuter Railroad Corporation d/b/a Metra, 547 West Jackson Boulevard 15th Floor, Chicago IL 60661 — NORTILL-40

**CERTIFICATE NUMBER**: 1104350600
**REVISION NUMBER**:

## COVERAGES

| INSR LTR | TYPE OF INSURANCE | ADDL INSD | SUBR WVD | POLICY NUMBER | POLICY EFF (MM/DD/YYYY) | POLICY EXP (MM/DD/YYYY) | LIMITS |
|---|---|---|---|---|---|---|---|
| A | COMMERCIAL GENERAL LIABILITY [X] / CLAIMS-MADE / [X] OCCUR | | | PC0863424 | 7/15/2024 | 7/15/2025 | EACH OCCURRENCE $7,500,000; DAMAGE TO RENTED PREMISES (Ea occurrence) $; MED EXP (Any one person) $; PERSONAL & ADV INJURY $ |
| | GEN'L AGGREGATE LIMIT APPLIES PER: [X] POLICY / PROJECT / LOC / OTHER: | | | | | | GENERAL AGGREGATE $15,000,000; PRODUCTS - COMP/OP AGG $ |
| A/B | AUTOMOBILE LIABILITY / ANY AUTO / OWNED AUTOS ONLY / SCHEDULED AUTOS / [X] HIRED AUTOS ONLY / [X] NON-OWNED AUTOS ONLY / [X] Excess Auto | | | PC0863424 / HNO100026201 | 7/15/2024 / 12/15/2023 | 7/15/2025 / 12/15/2024 | COMBINED SINGLE LIMIT (Ea accident) $1,000,000; BODILY INJURY (Per person) $; BODILY INJURY (Per accident) $; PROPERTY DAMAGE (Per accident) $ |
| | UMBRELLA LIAB / OCCUR / EXCESS LIAB / CLAIMS-MADE / DED / RETENTION $ | | | | | | EACH OCCURRENCE $; AGGREGATE $ |
| | WORKERS COMPENSATION AND EMPLOYERS' LIABILITY Y/N; ANY PROPRIETOR/PARTNER/EXECUTIVE OFFICER/MEMBER EXCLUDED? (Mandatory in NH) If yes, describe under DESCRIPTION OF OPERATIONS below | N/A | | | | | PER STATUTE / OTHER; E.L. EACH ACCIDENT $; E.L. DISEASE - EA EMPLOYEE $; E.L. DISEASE - POLICY LIMIT $ |

**DESCRIPTION OF OPERATIONS / LOCATIONS / VEHICLES** (ACORD 101, Additional Remarks Schedule, may be attached if more space is required):
$28,000,000 in excess of $295,000,000
Bermuda - PC0861224 Chubb Bermuda $28,000,000

$57,500,000 in excess of $237,500,000
London Lloyds
PC0855024 QBE Casualty Syndicate 1886 $7,500,000
PC0855124 Magna Carta Puni Wrap $7,500,000
PC0855224 Ascot Syndicate 1414 Lloyds $10,000,000
See Attached...

**CERTIFICATE HOLDER**:
Union Pacific Railroad Company
1400 Douglas St Mail Stop 0730
Omaha NE 68179
United States

**CANCELLATION**: SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, NOTICE WILL BE DELIVERED IN ACCORDANCE WITH THE POLICY PROVISIONS.

**AUTHORIZED REPRESENTATIVE**: [signature]

© 1988-2015 ACORD CORPORATION. All rights reserved.

ACORD 25 (2016/03)   The ACORD name and logo are registered marks of ACORD

| | |
|---|---|
| AGENCY CUSTOMER ID: | NORTILL-40 |
| LOC #: | |

# ACORD — ADDITIONAL REMARKS SCHEDULE

Page 1 of 1

| AGENCY | NAMED INSURED |
|---|---|
| Arthur J. Gallagher Risk Management Services, LLC | Northeast Illinois Regional Commuter Railroad Corporation d/b/a Metra |
| POLICY NUMBER | 547 West Jackson Boulevard 15th Floor |
| | Chicago IL 60661 |
| CARRIER | NAIC CODE |
| | EFFECTIVE DATE: |

**ADDITIONAL REMARKS**

THIS ADDITIONAL REMARKS FORM IS A SCHEDULE TO ACORD FORM,
FORM NUMBER: 25    FORM TITLE: CERTIFICATE OF LIABILITY INSURANCE

PC0855324 Ascot Bermuda Puni Wrap $10,000,000

Europe - PC0854824 Munich Re $12,500,000
Bermuda - LSMAEC157246A / PC0854724 Liberty SM Bermuda $15,000,000
Bermuda - PC0854924 Chubb Bermuda Insurance Ltd. $12,500,000

$77,500,000 in excess of $160,000,000
London - PC0849024 Lloyds
Apollo $12,500,000
Canopius $7,500,000
Aspen $5,000,000
Axa XL $5,000,000
Inigo $5,000,000
Map $5,000,000
MCPD210512/PC0849124 Magna Carta Puni Wrap $40,000,000

London - PC0850524 Argo Re $10,000,000
London - PC0849324 Markel $5,000,000
London - PC0863724 Arcadian $2,500,000
Bermuda - PC0850524 (shared with Argo) Helix $15,000,000
Bermuda - PC0863624 Sompo $5,000,000

$25,000,000 in excess of $135,000,000
Bermuda - XLUMB-602521/PC0863524 Axa XL $25,000,000

$35,000,000 in excess of $100,000,000
London - PC0849524 Lloyd's
CV Starr $10,000,000
Hamilton Re $7,000,000
AWAC London $5,000,000
PC0849624 Magna Carta Puni Wrap $17,000,000
AWAC Bermuda Puni Wrap $5,000,000

London - PC0848924 Markel $5,000,000
London - PC0864324 Arcadian $5,000,000
London - PC0849724 Argo $3,000,000

$85,000,000/$170,000,000 in excess of $15,000,000
Metra is included in RTA's layer of $85M x $15M
Per RTA Schematic
$7,500,000/$15,000,000 in excess of $7,500,000 SIR - (except Auto $3,000,000; GL/Premises Non Rail Meetings $1,000,000; Family Fun Days $1,000,000; Special Trains $1,000,000)

Primary: Lloyd's Synd 1225 AEGIS Managing AgncBermuda - PC0863424 $7,500,000

Certificate holder is included as Additional insured on General liability and Excess Auto Liability policy as required by written contract. Both are covered under policy #PC0863424 XL Catlin Insurance Company UK Limited with FELA coverage and Employee Liability.

Certificate holder is included as Additional Insured on the General Liability, Automobile and Employers Liability policies, when required by written contract.

A Waiver of Subrogation is provided in favor of the additional insureds as required by written contract and applies with respect to General Liability, Automobile and Employers Liability.

ACORD 101 (2008/01)    © 2008 ACORD CORPORATION. All rights reserved.
The ACORD name and logo are registered marks of ACORD