## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ILLINOIS EASTERN DIVISION

| | |
|---|---|
| Union Pacific Railroad Company, | |
| Plaintiff, | |
| v. | C.A. No. 25-cv-10785 |
| Commuter Rail Division of the Regional Transportation Authority, d/b/a Metra, | |
| Defendant. | |

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANT METRA'S MOTION TO DISMISS OR,
## IN THE ALTERNATIVE, STAY PROCEEDINGS

Matthew Madden
MCDERMOTT WILL & SCHULTE LLP
444 West Lake Street
Chicago, IL 60606-0029
(312) 984-3273
mmadden@mwe.com

Paul W. Hughes (*pro hac vice*)
Mary H. Schnoor (*pro hac vice*)
Emmett Witkovsky-Eldred (*pro hac vice*)
MCDERMOTT WILL & SCHULTE LLP
500 North Capitol Street NW
Washington, DC 20001
(202) 756-8000
phughes@mwe.com

*Counsel for Defendant Commuter Rail Division of the Regional Transportation Authority, d/b/a Metra*

# TABLE OF CONTENTS

Introduction.................................................................................................................1

Background.................................................................................................................3

    A.   The underlying dispute ............................................................3

    B.   The STB's order granting Metra terminal trackage rights.............................6

Argument ...................................................................................................................7

I.    The Court lacks subject matter jurisdiction to adjudicate UP's collateral attack on the STB Order.............................................................................................7

II.   In the alternative, the Court should stay. ..........................................................13

Conclusion ...............................................................................................................15

i

# TABLE OF AUTHORITIES

## Cases

*Assure Competitive Transp., Inc. v. United States*,
  629 F.2d 467 (7th Cir. 1980) .................................................................10, 11, 12

*Baker v. IBP, Inc.*,
  357 F.3d 685 (7th Cir. 2004) ....................................................................14

*Baros v. Tex. Mexican Ry. Co.*,
  400 F.3d 228 (5th Cir. 2005) ...............................................................11, 13

*Bhd. of Locomotive Eng'rs v. Bos. & Maine Corp.*,
  788 F.2d 794 (1st Cir. 1986) ...................................................................13

*Commuter Rail Div. v. Union Pac. R.R. Co.*,
  No. 1:25-cv-02439 (N.D. Ill. Sept. 8, 2025) ...............................................5, 6

*Dave v. Rails–to–Trails Conservancy*,
  79 F.3d 940 (9th Cir. 1996) .................................................................... 11

*Denberg v. U.S. R.R. Ret. Bd.*,
  696 F.2d 1193 (7th Cir. 1983) ...................................................................10

*F.C.C. v. ITT World Communications, Inc.*,
  466 U.S. 463 (1984) ..........................................................................10, 11, 12

*Frank's Maint. & Eng'g, Inc. v. C. A. Roberts Co.*,
  408 N.E.2d 403 (Ill. App. 3d Dist. 1980) ...................................................15

*Great N. Ry. Co. v. Merchant's Elevator Co.*,
  259 U.S. 285 (1922) ...............................................................................15

*Island Creek Coal Sales Co. v. Interstate Commerce Comm'n*,
  561 F.2d 1219 (6th Cir. 1977) ..................................................................11

*Keokuk Junction Ry. Co. v. Toledo, Peoria & W. Ry. Corp.*,
  2013 WL 5926056 (C.D. Ill. Sept. 9, 2013) ................................................4, 9

*Levya v. Certified Grocers of Calif.*,
  593 F.2d 857 (9th Cir. 1979) ....................................................................14

*Marseilles Hydro Power, LLC v. Marseilles Land & Water Co.*,
  2003 WL 259142 (N.D. Ill. Feb. 4, 2003) ..................................................13

*McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp.*,
  606 U.S. 146 (2025) ................................................................................9

*Phoenix Ins. Co. v. Rosen*,
  949 N.E.2d 639 (Ill. 2011) .......................................................................15

*Ry. Lab. Execs.' Ass'n v. Guilford Transp. Indus., Inc.*,
  989 F.2d 9 (1st Cir. 1993) ........................................................................12

*Santiago v. Tesla, Inc.*,
  757 F. Supp. 3d 831 (N.D. Ill. 2024) .........................................................8

**Cases—continued**

*Suburban O'Hare Comm'n v. Dole*,
  603 F. Supp. 1013 (N.D. Ill. 1985) ...................................................................13

*Tice v. Am. Airlines, Inc.*,
  288 F.3d 313 (7th Cir. 2002) ...........................................................................13

*Union Pac. R.R. Co. v. Reg'l Transp. Auth.*,
  74 F.4th 884 (7th Cir. 2023) ..............................................................................1

*Union Pacific v. Surface Transp. Bd.*,
  No. 25-2919 (8th Cir.) .....................................................................................2, 7

*Venner v. Michigan Cent. R.R. Co.*,
  271 U.S. 127 (1929).............................................................................10, 12, 13

*Victor Oolitic Stone Co. v. CSX Transp., Inc.*,
  852 F. Supp. 721 (S.D. Ind. 1994) ...............................................................12, 13

**Statutes and Rules**

28 U.S.C.
  § 2321(a) .............................................................................................................9
  § 2342 .................................................................................................................9

49 U.S.C.
  § 10501(b) ......................................................................................................2, 7
  § 11102(a) ................................................................................................. *passim*

Fed. R. Civ. Pro. 12(b)(1) ................................................................................3, 7

Fed. R. Civ. Pro. 12(b)(6) ................................................................................3, 7

**Other Authorities**

*Commuter Rail Division of the Regional Transportation Authority d/b/a Metra—
Terminal Trackage Rights—Union Pacific Railroad Company*,
  Surface Transportation Board, Finance Docket 36844 (S.T.B.)................................4

## INTRODUCTION

On September 3, 2025, the Surface Transportation Board (STB) granted Metra statutory rights to use three rail lines owned by Union Pacific (UP) to provide commuter service in the Chicago area. Ex. 1 (STB Order). Metra argued that the rights granted were necessary for Metra to provide its public transportation service over these rail lines (the UP Lines) "on transparent, reasonable, and bilateral terms and with the certainty required, as Congress understood, to run a railroad"—and the STB agreed. *Id.* at 26. Consistent with the governing statute (49 U.S.C. § 11102(a)), the STB ordered the two sides to negotiate compensation and conditions for Metra's use of the UP Lines. STB Order at 33. "If the parties cannot reach an agreement," however, "the [STB] will establish the compensation and conditions of use in accordance with the statute." *Id.*

As with many railroad matters, the dispute over Metra's use of the UP Lines has some history. For the past five decades, UP or a predecessor has provided the commuter rail service on the UP Lines under a services contract with Metra or a predecessor. The commuter service supports more than 13 million passenger trips annually and accounts for 39 percent of Metra's ridership. Ex. 1 at 27. In 2019, UP decided to discontinue providing the rail service, and it transitioned the service to Metra.[1] Earlier this year, Metra began operating the commuter service on the UP Lines itself for the first time. Then, on June 30, 2025, the parties' historical agreement—the Purchase of Service Agreement (PSA)—expired.

In anticipation of the PSA's expiration, Metra sought relief from the STB to obtain terminal trackage rights—that is, an order granting Metra a statutory right to use the UP Lines. *See* 49 U.S.C. § 11102(a). In granting that relief over UP's opposition, the STB found that Metra's request was "consistent with Congress's clearly expressed intent" and "warranted by

---

[1]     *See Union Pac. R.R. Co. v. Reg'l Transp. Auth.*, 74 F.4th 884 (7th Cir. 2023).

UP's continued and repeated insistence that it has the unilateral right to set the terms and conditions under which Metra can access the UP Lines, including the ability to deny Metra access altogether." Ex. 1 at 30.

In granting relief, the STB expressly seized jurisdiction as to what amount of compensation Metra is to pay UP for the use of its facilities *beginning July 1, 2025*. The STB first ordered the parties to negotiate the compensation due in accordance with the governing statute. Ex. 1 at 32. Then:

> If the parties cannot reach agreement, and the Board is required to set interim terms and conditions governing Metra's access, there will be an accounting and reconciliation when final terms are set. UP will be reimbursed *retroactively (from July 1, 2025)* if the interim amount paid by Metra is less than the final amount set.

*Id.* (emphasis added). When, as here, the STB asserts jurisdiction, its jurisdiction is "exclusive." 49 U.S.C. § 10501(b).

UP is entitled to disagree with the STB Order. And it may seek judicial review via the review provisions of the Hobbs Act. UP, in fact, has already petitioned for review in the Eighth Circuit. *See Union Pacific v. Surface Transp. Bd.*, No. 25-2919 (8th Cir.).

What UP may not do is file litigation that collaterally challenges the STB Order. Yet that is just what UP has done here. UP's complaint hangs on the allegations that "[t]he STB's decision does not purport to apply retroactively in any way," and "it does not affect . . . Metra's obligation to pay the full amounts owed . . . for the period between July 1 and September 3." Compl. (ECF No. 1) ¶ 63. Those allegations contradict and misstate the STB Order (Ex. 1), which UP references in—but did not include with—its complaint.

If the STB is correct in its jurisdictional holding—Metra submits it is—then the STB is the "exclusive" forum to resolve what compensation Metra owes UP for operating on the UP Lines from July 1 to September 3 (and afterward). In seeking to enforce the non-negotiated

"Condition of Entry" (COE) that UP asserts it imposed on Metra starting July 1, 2025, UP asks the Court to resolve the very issues already decided by the STB (whether STB has jurisdiction, effective July 1) and currently pending before it (the amount of compensation for Metra to use the UP Lines). Because UP's complaint is a collateral challenge to the STB Order, the Court should dismiss the complaint for lack of jurisdiction pursuant to Rule 12(b)(1). For the same reason, UP fails to state a claim and its complaint must be dismissed under Rule 12(b)(6).

Alternatively, the Court should stay this case until the ongoing STB proceeding has concluded, consistent with basic notions of judicial efficiency and comity. The question of what compensation applies from July 1 onward will be determined in the STB proceeding; the parties may reach agreement through negotiation under the STB's supervision, or the STB may "establish the compensation and conditions of use in accordance with the statute." Ex. 1 at 33. In either event, this action will be moot. Further, a stay will ensure that the Court has all the facts and does not order relief that contradicts an order of the STB. The STB has already granted trackage rights, continues to supervise the parties' statutorily required negotiations, and stands ready to render its expert judgment over compensation—including during the precise period covered by UP's complaint. The Court should decline UP's invitation to interfere with that ongoing proceeding.

## BACKGROUND

### A.      The underlying dispute

Metra is responsible for providing public transportation by commuter rail in the Chicago region. Compl. ¶ 21. Three of Metra's most popular routes run on the UP Lines. *Id.* ¶ 24. In 1976, UP's predecessor, the Chicago and North Western Railway Company (CNW) began operating commuter rail service by agreement with Metra's predecessor. *Id.* ¶ 28. CNW, and later UP, operated commuter rail service on these lines for the next five decades.

In 2019, UP informed Metra that it intended to discontinue operation of commuter rail service on the UP Lines. Compl. ¶ 30. Following litigation, the parties negotiated a transition of commuter rail operations so that, going forward, these operations would be provided directly by Metra. *Id.* ¶ 34. The parties substantially completed that transition on May 16, 2025. *Id.* ¶ 35. The parties also sought to negotiate an agreement to replace the PSA that had governed the provision of commuter rail service while UP operated the service. *Id.* ¶ 36. The PSA expired on June 30, 2025, with no successor agreement in place. *Id.*

On March 7, 2025, with expiration of the PSA looming, Metra filed an application for terminal trackage rights with the STB pursuant to 49 U.S.C. § 11102(a). Compl. ¶ 46; *see also generally Commuter Rail Division of the Regional Transportation Authority d/b/a Metra— Terminal Trackage Rights—Union Pacific Railroad Company*, Surface Transportation Board, Finance Docket 36844.[2] Under the statute, the STB "may require terminal facilities, including main-line tracks for a reasonable distance outside of a terminal, owned by a rail carrier providing transportation subject to the jurisdiction of the Board under this part, to be used by another rail carrier." 49 U.S.C. § 11102(a). The statute makes "rail carriers … responsible for establishing the conditions and compensation for use of the facilities" in the first instance, and the STB may set terms, if the parties cannot agree. *Id.*

Also on March 7, 2025, Metra sued UP in this District asserting, among other claims, breach of contract concerning UP's repeated promises, in dozens of contracts in exchange for hundreds of millions of dollars of improvements to the UP Lines, that those improvements would remain "in service and available to be used" throughout the useful life of those improvements.

---

[2] At the pleading stage, "[t]he Court may consider matters of public record," including "files of STB proceedings." *Keokuk Junction Ry. Co. v. Toledo, Peoria & W. Ry. Corp.*, 2013 WL 5926056, at *1 (C.D. Ill. Sept. 9, 2013), *adopted in relevant part* 2013 WL 5925712 (C.D. Ill. Nov. 5, 2013).

Compl. ¶ 43; *see also* First Amended Complaint, *Commuter Rail Div. v. Union Pac. R.R.*, No. 1:25-cv-2439, Dkt. 37 at ¶¶ 205-219 (N.D. Ill. May 27, 2025).

On June 4, 2025, UP informed Metra that it intended to impose a non-negotiated "Condition of Entry" that it purported would govern the parties' relationship after the PSA expired. Compl. ¶ 48.[3] The COE contained an explicit threat of exclusion: if Metra did not abide by its terms, UP claimed the right to force Metra off the UP Lines. *See* Compl. Ex. A §§ 11.1, 12.6; *see also* Compl. ¶ 48 (calling the COE "the exclusive terms and conditions on which UP was willing to allow Metra access to its rail lines"). Among other things, the COE would double the compensation Metra owed UP for use of the UP Lines, relative to what Metra paid under the PSA (Compl. ¶ 47); it would impose a virtual blanket indemnification of UP's liability on the UP Lines, even for claims from UP's own operations (Compl. Ex. A § 9); and it would require Metra to waive its right to a jury trial (*id.* § 12.5).

Metra has consistently maintained that the COE is unenforceable and that it breaches both Metra's statutory rights and UP's contractual commitments to Metra.[4] Since July 1, 2025, Metra has operated on the UP Lines while repeatedly notifying UP that it rejects the COE. Compl. ¶ 55. *See, e.g.*, Compl. Ex. B ("To be clear: Metra's decision to operate on the UP Lines does not constitute agreement to the COE, which it categorically and unequivocally rejects as unreasonable, unconscionable, and contrary to law.").

---

[3]    As the STB Order described, "[t]o the extent the COE is a contract," it is "a contract of adhesion." Ex. 1 at 28 n.59. Metra's service is essential for tens of thousands of daily riders. Analogizing the COE to a "ticket … to enter Wrigley Field" (Compl. ¶ 16) is an inapt comparison.

[4]    Metra sought—and was denied—injunctive relief from this Court and the STB. Neither the district court nor the STB opined on the validity of the COE. But one member of the STB "strongly question[ed] UP's tactics in presenting the COE to Metra and claiming that Metra's access to UP's Lines will be governed by the terms of the COE beginning July 1, 2025." Ex. 3 at 4.

### B.   The STB's order granting Metra terminal trackage rights

On September 3, 2025, the STB granted Metra's application. *See generally* Ex. 1 (STB Order).[5] The STB said that it "expects and encourages Metra and UP to undertake a concerted, good faith effort to reach agreement on terms and compensation for Metra's use of the UP Lines." *Id.* at 33. "If the parties cannot reach an agreement," the STB pledged to "establish the compensation and conditions of use in accordance with the statute." *Id.*

On compensation, the STB said that it "expects Metra to continue to compensate UP for [Metra's] use of the UP Lines so as to avoid any interim impairment to UP's financial interests." *Id.* at 32.[6] "If the parties cannot reach agreement, and the [STB] is required to set interim terms and conditions governing Metra's access, there will be an accounting and reconciliation when final terms are set … [and] UP will be reimbursed retroactively (*from July 1, 2025*) if the interim amount paid by Metra is less than the final amount set." *Id.* (emphasis added).

The STB continues to supervise this matter. It ordered the parties to negotiate and provide a status update by November 3, 2025, and, if necessary, every 60 days thereafter. Ex. 1 at 33. "[T]o the extent the parties are unable to agree," the STB stands ready "to establish compensation and/or conditions of use." *Id.* Either party may request that relief at any time. *Id.*

UP has exercised that option already. On September 29, 2025, UP requested that the STB impose an interim condition regarding liability and indemnity. *See generally* Ex. 5. It proposed that the STB reinstate the terms of the PSA pertaining to those issues. *Id.* The next day, on September 30, 2025, the STB granted UP's request. *See* Ex. 6.

---

[5]   Metra then promptly dismissed its action pending in this District. *See* Notice of Voluntary Dismissal, *Commuter Rail Div. v. Union Pac. R.R. Co.*, No. 1:25-cv-02439, Dkt. 71 (N.D. Ill. Sept. 8, 2025).

[6]   Metra has done so based on the last agreed compensation amount between the parties, as UP's complaint concedes. Compl. ¶ 57; Supp. Pleading (ECF No. 33) ¶ 2.

On September 29, 2025, UP filed a petition for review of the STB Order. *See Union Pacific*, No. 25-2919 (8th Cir.). That petition for review remains pending.

## ARGUMENT

UP's complaint should be dismissed: Because the question of how much Metra should pay UP for the period from July 1 to September 3, 2025, is an issue that the STB has explicitly determined is within its exclusive jurisdiction, UP's complaint is an impermissible collateral attack on the STB Order. This Court should thus dismiss this lawsuit pursuant to Rules 12(b)(1) and 12(b)(6) because it cannot entertain such a collateral attack.

In the alternative, a stay pending completion of the STB proceedings is appropriate.

## I.  THE COURT LACKS SUBJECT MATTER JURISDICTION TO ADJUDICATE UP'S COLLATERAL ATTACK ON THE STB ORDER.

UP's complaint rests on the allegation that "[t]he STB's decision does not purport to apply retroactively in any way," and "[t]hus, whatever its prospective effect, it does not affect the COE's validity starting on July 1 … ." Compl. ¶ 63. The STB, however, expressly held that "UP will be reimbursed *retroactively (from July 1, 2025)* if the interim amount paid by Metra is less than the final amount set." Ex. 1 at 32 (emphasis added). That is, the STB *has* exercised jurisdiction over the subject matter of this lawsuit—the amount of money Metra must pay UP for use of the UP Lines from July 1 to September 3, 2025. Where the STB has jurisdiction, it is exclusive. While UP may wish to challenge the STB's jurisdictional conclusion, UP cannot do so here. It must present its challenges in a petition for review to an appropriate court of appeals.

**A.** STB jurisdiction regarding "rates, classifications, rules (including car service, interchange, and other operating rules), practices, routes, services, and facilities" is "exclusive," and thus disputes within the STB's regulatory purview belong to the STB alone. 49 U.S.C. § 10501(b). Here, the STB determined that it has jurisdiction over this dispute under Section 11102(a). *See* Ex. 1 at 4-11. The statute, among other things, empowers the STB to "require" UP

7

to allow Metra to use its facilities, which the STB has done. 49 U.S.C. § 11102(a). It also empowers the STB, and only the STB, if the carriers cannot agree, to "establish conditions and compensation for use." *Id.* Because access under Section 11102 once granted is obligatory, the incumbent rail carrier cannot use the threat of exclusion from its rail lines or other means to dictate terms.

Accordingly, it is through the pending *STB* proceeding, and not through UP's non-negotiated COE, that the question of compensation for Metra's use of the UP Lines from July 1 to September 3 will be resolved. Either the parties agree bilaterally, or the STB decides. That is what the STB said.

UP does not appear to disagree in material part about the implications of the STB's assertion of jurisdiction for the effectiveness of the COE. It admits that the STB "granted Metra the right to operate over the UP Lines from September 3 onward without UP's consent." Compl. ¶ 61. UP thus appears to acknowledge the "prospective effect" that the STB's action has on the "COE's validity." *Id.* ¶ 63. That acknowledgement is correct—there is no other way to read the STB's decision.

Nonetheless, UP asserts that the STB Order "does not affect the COE's validity starting on July 1 or Metra's obligation to pay the full amounts owed thereunder for the period between July 1 and September 3." Compl. ¶ 63. It says so based on the alleged premise that "[t]he STB's decision does not purport to apply retroactively in any way." *Id.* ¶ 61. But that is *precisely* what the STB Order does—in the most explicit of terms. Per the STB, "UP will be reimbursed *retroactively (from July 1, 2025)* if the interim amount paid by Metra is less than the final amount set." Ex. 1 at 32 (emphasis added). The STB's assertion of jurisdiction on its face "purport[s] to apply retroactively." As a "document [UP] incorporated into [its] complaint by reference" (*Santiago v. Tesla, Inc.*, 757 F. Supp. 3d 831, 842 n.1 (N.D. Ill. 2024))—not to

8

mention an agency order subject to judicial notice in any event (*see Keokuk Junction,* 2013 WL 5926056, at *1))—this Court does not owe UP's incorrect description of the STB order any credence.

**B.** UP, of course, disagrees with the STB Order. The proper—and sole—means to air that disagreement is through a petition of review consistent with the Hobbs Act, and UP already has petitioned for review of the STB Order, including the agency's assertion of jurisdiction. *See* Ex. 7 at 2.[7] What UP may not do is use this action to collaterally challenge what the STB has already decided.

The legal framework is straightforward: The Hobbs Act grants the "court of appeals … *exclusive jurisdiction* to enjoin, set aside, suspend (in whole or in part), or to determine the validity of … all … final orders of the Surface Transportation Board." 28 U.S.C. § 2342 (emphasis added); *see also* 28 U.S.C. § 2321(a). This means that "the losing party in [an] adjudicative proceeding" cannot "seek[] to relitigate the agency's decision" in federal district court. *McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp.*, 606 U.S. 146, 165 (2025). Thus, though on the readily distinguishable facts of *McLaughlin* the Court held that a district court may entertain attacks on an agency's order in subsequent enforcement proceedings, it reaffirmed that where "two parties are opposed in an agency's adjudicative proceeding," an effort by the "losing party"—here, UP—"to upset the result of that adjudicative proceeding in an ordinary district court suit rather than in the court of appeals" is "barred." *Id*.

The Supreme Court has precluded collateral attacks against agency proceedings,

---

[7]     Despite alleging here that the STB Order had no retroactive effect (*see* Compl. ¶ 63), in the Eighth Circuit, UP acknowledged that STB "'pledge[d]' that, if the parties cannot agree on compensation, the Board 'will set appropriate terms' at some future time 'with retroactive effect.'" Ex. 4 at 10.

protecting instead the exclusive jurisdiction of the appellate courts in Hobbs Act proceedings. "Litigants," the Supreme Court has held, "may not evade [the jurisdictional requirements of the Hobbs Act] by requesting the District Court to enjoin action that is the outcome of the agency's order." *F.C.C. v. ITT World Communications, Inc.*, 466 U.S. 463, 468 (1984). Nor does it matter if a new lawsuit raises somewhat different claims, if the "gravamen" of both complaints (*id.* at 468 n.5) is similar enough that, "in substance," the complaint "raised the same issues" and sought the same relief as had been adjudicated by the agency (*id.* at 468). *See also Venner v. Michigan Cent. R.R. Co.*, 271 U.S. 127, 129-131 (1929) (holding that complaint was an improper collateral attack on an order of the Interstate Commerce Commission, the STB's predecessor, because the complaint was "essentially one to annul or set aside the order of the commission," which, though it "d[id] not expressly pray that the order [of the ICC] be annulled or set aside" nonetheless "assail[ed] the validity of the order and pray[ed] that the defendant company be enjoined from doing what the order specifically authorize[d]").

Put differently, an impermissible collateral attack exists where "the practical effect of a successful suit would contradict or countermand [the ICC] order." *Assure Competitive Transp., Inc. v. United States*, 629 F.2d 467, 470-472 (7th Cir. 1980) ("*ACT*"). In these circumstances, the Seventh Circuit has demanded that the court of appeals' jurisdiction be given a wide berth: "where it is unclear whether review jurisdiction is in the district court or the court of appeals the ambiguity is resolved in favor of the latter." *Denberg v. U.S. R.R. Ret. Bd.*, 696 F.2d 1193, 1197 (7th Cir. 1983).

**C.** Here, the "gravamen" of UP's complaint (*ITT World Commc'ns*, 466 U.S. at 468 n.5) is that UP is owed certain compensation for Metra's use of the UP Lines from July 1 to September 3, 2025. In seeking that relief, UP presses a collateral challenge to the STB Order, which held that compensation for this same period would be determined in the pending Section

11102 proceeding. This is so for two principal reasons.

**First,** UP's complaint depends on arguing that the STB lacks the authority to order relief on the question of compensation retroactive to July 1. Because the STB has claimed that authority (and thereby asserted jurisdiction at least as of that date), UP's lawsuit cannot succeed unless the STB was incorrect in asserting jurisdiction. But there is only one proper venue to air that disagreement with the STB: a petition for review in the court of appeals. As numerous courts have recognized, a challenge to an agency's exercise of authority belongs in a petition for review, not a collateral district court suit. *See, e.g., ITT World Commc'ns*, 466 U.S. at 468 (district court lacked jurisdiction over claim that agency acted "*ultra vires*"); *ACT*, 629 F.2d at 470 (district court lacked jurisdiction over challenge to ICC orders as invalid due to the agency's composition); *Baros v. Tex. Mexican Ry. Co.*, 400 F.3d 228, 234-238 (5th Cir. 2005) (district court lacked jurisdiction over suit that implicitly challenged the STB's determination that it had jurisdiction over segments of rail); *Island Creek Coal Sales Co. v. Interstate Commerce Comm'n*, 561 F.2d 1219, 1222 (6th Cir. 1977) (district courts lacked jurisdiction over challenge implicating "the fundamental power of the Commission to issue [its order]").

*Baros* is particularly instructive. In that case, the Fifth Circuit held that a district court lacked jurisdiction to adjudicate a complaint brought by landowners alleging that a railroad company had abandoned a segment of rail. 400 F.3d 228, 234-238 (5th Cir. 2005). In several orders, the ICC and STB had exercised jurisdiction over this segment, and this exercise of regulatory authority was, necessarily, an "implicit[]" determination by the agency that the railroad had not abandoned that segment. *Id.* at 237. The STB having "implicitly" determined that the segment was not abandoned by exercising authority over it, the district court lacked jurisdiction to adjudicate a claim premised on the opposite being true. *Id.* Other courts, including district courts in the Seventh Circuit, have come to similar conclusions. *See, e.g., Dave v. Rails–*

*to–Trails Conservancy*, 79 F.3d 940, 942 (9th Cir. 1996) (district court lacked jurisdiction to consider a complaint collaterally attacking an ICC order related to track abandonment); *Victor Oolitic Stone Co. v. CSX Transp., Inc.*, 852 F. Supp. 721, 723 (S.D. Ind. 1994) (similar).

      **Second**, UP's complaint contradicts the relief ordered by the STB: that the parties are to negotiate, and, if necessary, the STB will set compensation retroactive to July 1. UP asks the Court to disrupt that process and impose the Court—rather than the STB—as the final arbiter of compensation, without the negotiation process the STB ordered nor leaving room for the STB to set compensation, as it said it would. *See* Ex. 1 at 32-33.

      Again, if UP believes that the COE should inform the compensation it is due, it can make that argument *to the STB*, as it has already done. *See* Ex. 2 at 29, 33 (UP "is willing to accept interim compensation at the level sought by [UP] in private negotiations"); Compl. ¶ 49 (COE is "[c]onsistent with" compensation UP has sought in private negotiations).

      It makes no difference that the complaint does not expressly ask the district court to overturn the STB's jurisdictional holding, nor that the claims are reframed as contract disputes. A district court lacks jurisdiction, even if "an order is not *directly* attacked[,] so long as the *practical effect* of a successful suit would contradict or countermand a Commission order." *ACT*, 629 F.2d at 472 (emphasis added).[8]

      Courts frequently hold that claims nominally related to enforcing putative agreements are in essence improper collateral attacks on an agency order related to the same dispute. *See, e.g.*,

---

[8]   *See also ITT World Commc'ns, Inc.*, 466 U.S. at 468 (district court lacks jurisdiction where "in substance" the complaint "raise[s] the same issues" and seeks the same relief denied by the agency); *Venner*, 271 U.S. at 130 (that "the amended bill d[id] not expressly pray that the order [of the ICC] be annulled or set aside" does not make it proper where the relief sought is "equivalent to asking that the order be adjudged invalid and set aside"); *Victor Oolitic Stone,* 852 F. Supp. at 723 ("A challenge to an order need not be direct for that jurisdiction to be invoked; all that is required is that the effect of the prayed for relief contradict a Commission order.")

*Ry. Lab. Execs.' Ass'n v. Guilford Transp. Indus., Inc.*, 989 F.2d 9, 10-11 (1st Cir. 1993) (claim related to breach of labor agreement was jurisdictionally barred); *Bhd. of Locomotive Eng'rs v. Bos. & Maine Corp.*, 788 F.2d 794, 796 (1st Cir. 1986) (same); *Suburban O'Hare Comm'n v. Dole*, 603 F. Supp. 1013, 1025 (N.D. Ill. 1985) (claim seeking to enforce consent decree). Likewise, claims raising state-law issues not directly within the agency's bailiwick can be barred. *See, e.g.*, *Venner*, 271 U.S. at 129-131; *Victor Oolitic Stone,* 852 F. Supp. at 723; *Baros*, 400 F.3d at 234-238. Here, the remedy UP seeks would countermand the remedy ordered by the STB and would implicate the STB Order's validity. *See supra* at 10-12.

Because UP's entire case is a collateral attack on the STB Order—and it seeks relief that the STB has already determined is within its exclusive jurisdiction—this case should be dismissed. The Hobbs Act provides UP's exclusive means for judicial review.

## II.     IN THE ALTERNATIVE, THE COURT SHOULD STAY.

Alternatively, the court should stay this case until the STB proceeding has concluded.

Because the STB determined that this dispute is within its exclusive jurisdiction (*supra* at 7-8), this suit "must be stayed." *Tice v. Am. Airlines, Inc.*, 288 F.3d 313, 317 (7th Cir. 2002). As the Seventh Circuit has explained, "when, in a suit involving a regulated firm but not brought under the regulatory statute itself, an issue arises that is within the exclusive original jurisdiction of [a] regulatory agency to resolve … the suit must stop and the issue must be referred to the agency for resolution." *Id.*

That result is especially appropriate where, as here, the agency proceeding already is underway. In these circumstances, judicial economy, executive-judicial comity, and deference to the STB's expertise all mandate a stay pending the resolution of the STB proceeding. Courts frequently order stays in such circumstances. *See, e.g.*, *Marseilles Hydro Power, LLC v. Marseilles Land & Water Co.*, 2003 WL 259142, *4 (N.D. Ill. Feb. 4, 2003) ("A trial court may,

13

with propriety, find it is efficient for its own docket and the fairest course for the parties to enter a stay of an action before it, pending resolution of independent proceedings which bear upon the case.") (quoting *Levya v. Certified Grocers of Calif.*, 593 F.2d 857, 863-864 (9th Cir. 1979)).

The interests of judicial economy are apparent. The STB proceeding, which remains ongoing, will decide the question of what compensation applies from July 1 onward. As the STB Order states, there are two possible paths forward: either the parties agree to compensation, or the STB will set it, retroactive to July 1. Either way, this dispute is already on course to be resolved through the STB proceeding and without this Court needing to act.

Where the STB has asserted jurisdiction over this matter, continues to supervise the parties, and has stated that it will provide relief covering the period at issue, the best use of party and judicial resources—and the surest way to avoid the possibility of contradictory rulings—is a stay. Because the STB proceeding directly bears on the issues in this case, it will surely augment the relevant facts. UP has already indicated that it "is willing to accept interim compensation at the level sought by [UP] in private negotiations" (Ex. 2 at 29, 33)—a level "[c]onsistent with" the COE (Compl. ¶ 49). A stay therefore promotes more efficient dispute resolution, leaving space for the STB-ordered bilateral negotiation process to unfold and saving the Court (as well as the parties) time and resources, if compensation is adjudicated before the STB.

A stay is also prudent because UP's complaint raises issues that fall within the core expertise of the STB and will be resolved in the STB proceeding. It makes sense to give the STB the "first crack" at such issues. *Baker v. IBP, Inc.*, 357 F.3d 685, 688 (7th Cir. 2004). Adjudicating UP's claims would require this Court to determine the reasonable value of Metra's use of the UP Lines. Count IV expressly asks the Court to determine the "reasonable value of the service UP has provided and/or the benefit Metra has received." Compl. ¶ 94. Likewise, were this action to proceed, Metra would introduce evidence demonstrating that the COE is

14

substantively unconscionable, making it unenforceable. *See Phoenix Ins. Co. v. Rosen,* 949 N.E.2d 639, 647 (Ill. 2011). Because a contract is substantively unconscionable when it is not "commercially reasonable" (*Frank's Maint. & Eng'g, Inc. v. C. A. Roberts Co.*, 408 N.E.2d 403, 410 (Ill. App. 3d Dist. 1980)), this Court would need to determine whether the COE is commercially reasonable to adjudicate Counts I-III.

The STB is the appropriate arbiter of the reasonableness of rail rates and other conditions of use. *See, e.g.*, *Great N. Ry. Co. v. Merchant's Elevator Co*., 259 U.S. 285, 291 (1922) ("Whenever a rate, rule, or practice is attacked as unreasonable ..., there must be preliminary resort to the Commission."). Unless the parties voluntarily resolve the compensation issue, the STB will necessarily opine on that subject when the parties ask it to set final compensation and conditions of use. This Court should not proceed on that same question in parallel.

Nor would a stay prejudice UP. Only run-of-the-mill economic damages are at stake, which UP may recoup in the STB proceeding. As the STB Order details, UP can, at any time, request the STB to set compensation. Ex. 1 at 33. UP then will be able to present the rate of compensation demanded in the COE to the STB, allowing the expert agency to judge whether the compensation demanded in the COE is, as UP alleges, "commercially reasonable" (Compl. ¶ 43)—or not. UP can thus secure all the relief it requests here from the STB, and judicial review may follow pursuant to the Hobbs Act.

For all these reasons, in these circumstances, a stay's benefits far outweigh any costs. If the Court declines to dismiss UP's lawsuit, it should stay this litigation pending final resolution of the STB proceeding, and any resulting judicial review.

## CONCLUSION

The Court should dismiss this action. In the alternative, it should stay this case until the STB proceeding has concluded.

Dated: October 28, 2025                         Respectfully submitted,

                                                 /s/ *Paul W. Hughes*

Matthew Madden                                  Paul W. Hughes (*pro hac vice*)
MCDERMOTT WILL & SCHULTE LLP                    Mary H. Schnoor (*pro hac vice*)
444 West Lake Street                            Emmett Witkovsky-Eldred (*pro hac vice*)
Chicago, IL 60606-0029                          MCDERMOTT WILL & SCHULTE LLP
(312) 984-3273                                  500 North Capitol Street NW
mmadden@mwe.com                                 Washington, DC 20001
                                                (202) 756-8000
                                                phughes@mwe.com

                                                *Counsel for Defendant Commuter Rail*
                                                *Division of the Regional Transportation*
                                                *Authority, d/b/a Metra*