# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| UNION PACIFIC RAILROAD COMPANY,<br><br>*Plaintiff*,<br><br>v.<br><br>COMMUTER RAIL DIVISION OF THE REGIONAL TRANSPORTATION AUTHORITY,<br><br>*Defendant*. | No. 1:25-cv-10785<br>Hon. Franklin U. Valderrama |

## UNION PACIFIC'S BRIEF IN OPPOSITION TO METRA'S MOTION TO DISMISS

Bruce R. Braun
Charles K. Schafer
Andrew F. Rodheim
SIDLEY AUSTIN LLP
1 South Dearborn
Chicago, Illinois 60603
bbraun@sidley.com
cschafer@sidley.com
arodheim@sidley.com

Raymond A. Atkins (*pro hac vice*)
Tobias S. Loss-Eaton (*pro hac vice*)
Ogemdi Maduike (*pro hac vice*)
SIDLEY AUSTIN LLP
1501 K Street NW
Washington, DC 20005
202-736-8000
ratkins@sidley.com
tlosseaton@sidley.com
oge.maduike@sidley.com

*Attorneys for Plaintiff*
*Union Pacific Railroad Company*

November 20, 2025

**CONTENTS**

Table of authorities ................................................................................................................... iii

Introduction ................................................................................................................................ 1

Background ................................................................................................................................ 4

Argument ................................................................................................................................... 6

I.      This case is not a collateral attack on the STB's order. ..................................................... 6

         A.     Union Pacific's requested relief does not conflict with the STB's order. .............. 7

         B.     The STB did not "seize jurisdiction" over compensation for July and August. ................................................................................................................... 8

         C.     Even if the agency asserted jurisdiction retroactively, there is no conflict. ......... 11

II.     The Court should deny Metra's alternative request for a stay. ........................................ 13

Conclusion ............................................................................................................................... 16

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Assure Competitive Transp., Inc. v. United States*,
   629 F.2d 467 (7th Cir. 1980) ...............................................................................................7

*Bhd. of Loco. Eng'rs v. Bos. & Maine Corp.*,
   788 F.2d 794 (1st Cir. 1986) ...............................................................................................13

*BNSF Ry.—Discontinuance of Trackage Rights Exemption—in Peoria and
   Tazewell Cntys., Ill.*, No. FD 35404 .....................................................................................8

*Bowen v. Georgetown Univ. Hosp.*,
   488 U.S. 204 (1988).............................................................................................................9

*Burlington N. R.R. Co. v. Interstate Com. Comm'n.*,
   679 F.2d 934 (D.C. Cir. 1982) .............................................................................................8

*Grice Eng'g, Inc. v. JG Innovations, Inc.*,
   691 F. Supp. 2d 915 (W.D. Wis. 2010) .........................................................................13, 14

*McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp.*,
   606 U.S. 146 (2025)....................................................................................................2, 7, 8

*Nat'l Treasury Emps. Union v. Vought*,
   149 F.4th 762 (D.C. Cir. 2025)..........................................................................................10

*Sanimax USA LLC v. Union Pac. R.R. Co.*,
   No. R 42171, 2022 WL 577808 (S.T.B. served Feb. 24, 2022) ..........................................9

*Steel Co. v. Citizens for a Better Env't*,
   523 U.S. 83 (1998).............................................................................................................10

*Suburban O'Hare Comm'n v. Dole*,
   603 F. Supp. 1013 (N.D. Ill. 1985) ....................................................................................13

*Union Pac. R.R. Co. v. Reg'l. Transp. Auth.*,
   74 F.4th 884 (7th Cir. 2023) ................................................................................................4

*Union Pac. R.R. Co. v. Surface Transp. Bd.*,
   No. 25-2919 (8th Cir. docketed Sept. 29, 2025) ..................................................................6

*Velasquez-Garcia v. Holder*,
   760 F.3d 571 (7th Cir. 2014) ...............................................................................................9

**Statutes**

5 U.S.C. § 706(2) ...........................................................................................................10

28 U.S.C. § 2342(7) .........................................................................................................7

49 U.S.C. § 11102 ............................................................................................................5

49 U.S.C. § 11102(a) ............................................................................................4, 11, 14

## INTRODUCTION

The Court should not dismiss or stay this case because Union Pacific's requested relief does not conflict with the Surface Transportation Board's trackage-rights order. Nothing the STB ordered implicates the state-law contractual question here: Was the Condition of Entry (COE) that Union Pacific issued to Metra an enforceable contract as of July 1, 2025? And by answering this question, this Court will not contradict anything the agency has done. Metra is simply trying to avoid the adjudication of its contractual obligations for as long as possible.

For decades, Metra's commuter trains have operated on three Union Pacific lines in the greater Chicago area. Previously, the Metra–Union Pacific relationship was governed by a written contract. But that contract was set to expire on June 30, 2025. As the expiration date loomed, the parties were unable to negotiate a replacement. And while Metra asked the STB for statutory "trackage rights" to use Union Pacific's lines, it was unclear when the agency would act or what it would do. So in early June, Union Pacific issued the COE, stating the terms on which Metra could keep using Union Pacific's property after the old contract expired.

When June 30 came and went, Metra did just that, using the rail lines and thus accepting the COE's terms. But Metra refused to pay the full compensation owed under the COE. Union Pacific thus brought this state-law contract action, seeking damages for Metra's breaches of the COE and declaratory relief that Metra accepted the COE's terms, forming a valid contract, when it continued to use Union Pacific's lines with no other legal basis.

On September 3, the STB granted Metra's trackage-rights application, giving Metra a federal statutory right to use Union Pacific's lines. The STB's order is explicitly "effective" as of that date. *See* STB Order 34 (Doc. 35-1). The agency did not adopt any conditions or compensation terms—interim or final, retroactive or prospective—to govern Metra's operations. Rather, the STB "expects and encourages" the parties to negotiate terms; if they cannot agree, either party can

"request the Board to establish compensation and/or conditions of use." *Id.* at 33. The parties are negotiating now. If the Board is eventually asked to set terms or compensation, it will need to resume the matter, set a new procedural schedule, and order fresh discovery—essentially, it will need to start a whole new round of agency proceedings.

The upshot is this: From July 1 to September 3, the only source of Metra's right to operate over Union Pacific's lines was the COE. Effective September 3, Metra has a new statutory right to use the lines. But this case is about the contractual compensation due under the COE for the July 1–September 3 period, *before* the STB issued its order. So, while this case and the STB proceeding share a subject matter, the relief requested and issues presented are distinct.

Even so, Metra says this state-law breach-of-contract suit is an improper "collateral attack" on the STB's trackage-rights order. That is so, Metra says, because the STB "seized jurisdiction" over the question of "what amount of compensation Metra is to pay UP for the use of its facilities beginning July 1." Metra Mot. 2 (Doc. 35) (emphasis omitted). The basis for this assertion: A blink-and-you'll-miss-it parenthetical predicting that, if the parties' negotiations fail "and the Board is required to set interim terms and conditions," then "UP will be reimbursed retroactively (*from July 1, 2025*) if the interim amount paid by Metra is less than the final amount set." STB Order 32 (emphasis added). According to Metra, this unexplained aside ousts this Court of jurisdiction over Union Pacific's state-law breach claims.

Metra is mistaken. For the Hobbs Act to block this case, Union Pacific's requested relief would have to "upset the result of" the STB proceeding. *McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp.*, 606 U.S. 146, 165 (2025). It would not do so, for three reasons.

*First*, this action and the STB proceeding address different questions. The STB nowhere purported to decide whether the COE is a valid contract. Nor will it do so in future; the agency

2

leaves contract issues to courts. So nothing in the STB's order conflicts with Union Pacific's position that the COE was a binding Illinois contract as of July 1. Even Metra's motion doesn't dispute that Union Pacific has sufficiently alleged breaches of contract. So Metra's position is that this Court lacks the power to enforce a presumptively valid contract under state law—even though the federal agency hasn't addressed the subject and likely never will. That makes no sense.

*Second*, contrary to Metra's premise, the STB did not "seize jurisdiction" over the July 1–September 3 time period. At most, it *predicted* that it would set compensation retroactive to July 1 in future proceedings *if* the parties' negotiations failed. The parties did not brief, and the agency did not analyze or need to decide, whether the STB actually has the power to set compensation retroactively. Metra is wrong to assume that the STB unnecessarily resolved this controversial question with zero analysis. Indeed, if the agency ultimately reaches this question, it should conclude that it lacks such power.

*Third*, in any event, there is no conflict here. The STB did not set any terms or compensation for Metra's use of Union Pacific's lines, much less retroactive to July 1. The agency did not say how much Metra should be paying now, let alone how much it should have paid for July and August. It did not even say that it will ever set terms or compensation, retroactive or otherwise—only that it may need to do so "to the extent the parties are unable to agree." STB Order 33. Metra cites no case holding that the Hobbs Act ties a federal court's hands just because an agency said it *might* address an issue in future proceedings.

But even if the negotiations ultimately fail and the STB must set compensation, no conflict will arise. Again, the questions in the two proceedings are different. A ruling that the COE is (or is not) a valid contract under Illinois law will not prevent the STB from deciding the appropriate

"compensation for use of the facilities under the principle controlling compensation in condemnation proceedings," as the statute commands. 49 U.S.C. § 11102(a).

For that matter, the STB may need to know how the Court will answer the contractual question. If negotiations fail, and if the STB is asked to set compensation retroactive to July 1, then the agency will need to analyze whether it even has the ability to set compensation retroactively—and, if so, whether such a power would allow it to override a valid contract. As noted, the STB looks to the courts to answer questions about the validity of state-law contracts. So, far from conflicting with a potential future STB decision, the Court's decision in this case may be a necessary input for such a ruling.

There is no conflict between this case and the STB order. And for similar reasons, the Court should reject Metra's bid for an indefinite, likely-years-long stay in favor of an agency proceeding that hasn't even started yet. Metra's motion should be denied.

## BACKGROUND

For many years, Union Pacific (or its predecessor) operated commuter rail service on Metra's behalf over three Union Pacific-owned rail lines in the greater Chicago area. Compl. ¶¶ 24–28. That relationship was governed by a purchase-of-service agreement, or PSA.

In 2019, Union Pacific notified Metra that it no longer intended to provide this service for Metra, but was open to Metra running the service itself. *Id.* ¶ 30. The Seventh Circuit upheld Union Pacific's right to stop providing commuter service. *See Union Pac. R.R. Co. v. Reg'l. Transp. Auth.*, 74 F.4th 884, 889 (7th Cir. 2023). The parties then spent several years transitioning operational responsibility to Metra. Compl. ¶ 36. As of May 2025, that transition is substantially complete. *Id.* ¶ 35.

4

But the parties still needed a new agreement to govern their relationship. They have tried to negotiate a new contract, but they have not yet been successful. And after several extensions, the existing PSA was set to expire on June 30, 2025.

Metra's response was to sue Union Pacific, asserting various breach of contract and antitrust claims, and to file an application with the STB for terminal trackage rights over Union Pacific's lines under 49 U.S.C. § 11102. *Id.* ¶¶ 45–46. Metra's March 2025 application asked the STB to "require [Union Pacific] to allow Metra to use these terminal facilities and, if necessary, establish conditions and compensation for that use." *Id.* But it was unclear when or how the agency would act. At the same time, everyone agreed that Metra service should continue without interruption. And it was clear that *some* terms were needed to govern that service after the PSA expired.

Union Pacific thus issued the COE to Metra in early June, setting forth the terms and conditions on which Union Pacific was willing to allow Metra access to its rail lines to provide commuter rail service absent a negotiated agreement. *Id.* ¶ 48. The COE stated that, "[u]pon the first Metra train accessing Union Pacific's Rail Lines on July 1, 2025, at or after 00:01 AM CT, Metra shall be bound by these terms and conditions of entry." *Id.* ¶ 50.

Metra sought injunctive relief from both the court and the STB against the COE's enforcement, but it failed in both forums. *See id.* ¶¶ 51–54. Thus, when the clock struck midnight on June 30, the PSA expired and no contractual or regulatory terms *except* the COE allowed Metra to operate on Union Pacific's lines. And that is exactly what Metra did: On July 1, Metra entered Union Pacific's tracks and continued to provide commuter rail service as usual. *Id.* ¶ 56. Through July and August, Metra operated on Union Pacific's property—but it refused to pay the

5

compensation set in the COE, instead paying the lower amounts that *would have been* due under the now-expired PSA. *See id.* ¶¶ 57–60; Suppl. Pleading ¶ 1–3 (Doc. 33).

On September 3, the STB granted Metra's trackage-rights application. It did not, however, set any terms or compensation for Metra's use of Union Pacific's lines. Instead, the STB told the parties to negotiate those points. STB Order 33. The agency suggested that, "if UP and Metra cannot reach agreement respecting compensation terms, it will set appropriate terms under condemnation principles with retroactive effect." *Id.* at 31. The STB's order did not mention the COE except to suggest that Union Pacific could invoke "provisions in the COE" in dealing with Metra, and to note that the COE "appears to be a contract of adhesion." STB Order 28 & n.59.

Since the STB's September 3 order, Union Pacific and Metra have worked to negotiate terms to govern Metra's use of Union Pacific's lines under the order. On November 13, the parties submitted a joint status report to the STB, reporting that negotiations over conditions and compensation for Metra's continued use of Union Pacific's lines remain ongoing.

On September 9, Union Pacific filed this action based on Metra's failure to pay the full amount owed under the COE for July, seeking money damages and a declaration of the COE's validity. On October 10, Union Pacific filed a supplemental pleading addressing Metra's failure to pay the full amounts owed for August. *See* Suppl. Pleading ¶¶ 1–2. Union Pacific has also petitioned for review of the STB's September 3 order in the Eighth Circuit. *See Union Pac. R.R. Co. v. Surface Transp. Bd.*, No. 25-2919 (8th Cir. docketed Sept. 29, 2025).

## ARGUMENT

**I.     This case is not a collateral attack on the STB's order.**

The Court did not lose jurisdiction over this state-law breach-of-contract action when the STB prospectively granted Metra a federal statutory right to use Union Pacific's lines. The STB

6

did not "seize jurisdiction" over the time period at issue, and even if it had, this suit would not conflict with anything the agency has done or will do.

        A.        **Union Pacific's requested relief does not conflict with the STB's order.**

The Hobbs Act gives the courts of appeals "exclusive jurisdiction to enjoin, set aside, suspend (in whole or in part), or to determine the validity of" final STB orders. 28 U.S.C. § 2342(7). Thus, a district court cannot hear an appeal from an STB order. And to prevent parties from accomplishing the same result in a different form, the Hobbs Act also bars a party who lost before the agency from "seek[ing] to upset the result of that adjudicative proceeding in an ordinary district court suit." *McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp.*, 606 U.S. 146, 165 (2025). The statute thus bars collateral attacks—suits whose "practical effect" would be to "contradict or countermand [the agency] order." *Assure Competitive Transp., Inc. v. United States*, 629 F.2d 467, 472 (7th Cir. 1980).

This is not such a case. The STB decided Metra's statutory rights as of September 3 and ordered the parties to negotiate terms going forward; this case concerns the parties' contractual rights and obligations during July and August. There is no contradiction between the two.

The STB's order (i) upheld its jurisdiction to grant Metra's trackage-rights application, (ii) granted the application, (iii) directed the parties to file joint status reports on their negotiations by November 3 and then every 60 days thereafter, and (iv) stated that agency's order "is effective on the date of service," September 3. STB Order 1, 33–34. In other words: Metra has trackage rights over Union Pacific's lines "effective on" September 3, and the parties should now "undertake a concerted, good faith effort to reach agreement on terms and compensation" to govern the exercise of those rights. *See id.* Only if those efforts fail might the agency step in to "establish the compensation and conditions of use in accordance with the statute." *Id.* at 33.

7

By contrast, Union Pacific's complaint in this action seeks (i) a declaration that the COE became a valid and binding contract on July 1, (ii) a declaration that Metra is estopped from disputing the COE's validity, and (iii) money damages based on Metra's underpayments for July and August. *See* Compl. 17–18. The STB did not address any of this. Nor will it. The agency's consistent policy is to "refrain from interpreting or enforcing private contracts … leaving such issues to be resolved … in court." *BNSF Ry.—Discontinuance of Trackage Rights Exemption—in Peoria and Tazewell Cntys., Ill.*, No. FD 35404, 2011 WL 1564711 (S.T.B. served Apr. 26, 2011); *see also Burlington N. R.R. Co. v. Interstate Com. Comm'n*, 679 F.2d 934, 942 (D.C. Cir. 1982) (courts, not the agency, decide "whether alleged agreements are in fact binding legal contracts"). Indeed, the STB's order mentions the COE only in passing. *See* STB Order 28 & n.59.

In turn, none of Union Pacific's requested relief would "upset the result" of the agency's order. *McLaughlin*, 606 U.S. at 165. Union Pacific does not ask the Court to rule that Metra lacks the right to use its lines. It does not ask the Court to hold that it need not negotiate with Metra. It does not ask the Court to impose terms and conditions governing any time after September 3. And it does not ask the Court to revisit or disagree with the STB's statutory interpretation in any way. That should be the end of the matter.

### B. The STB did not "seize jurisdiction" over compensation for July and August.

Metra's contrary argument rests on the premise that the STB "seized jurisdiction" over "what amount of compensation Metra is to pay UP for the use of its facilities *beginning July 1*." Metra Mot. 2. "When, as here, the STB asserts jurisdiction, its jurisdiction is 'exclusive.'" *Id.* (quoting 49 U.S.C. § 10501(b)). Thus, Metra says, by hearing the contract claims in this case, the Court would be implicitly second-guessing "whether [the] STB has jurisdiction, effective July 1," to decide any statutory compensation issues. *Id.* at 3.

8

Metra's premise is wrong. The STB did nothing—jurisdictional or otherwise—with respect to the July 1–September 3 period. Metra's argument skips past the STB's decretal language, instead focusing on a *prediction* contained in the agency's justification for not fixing compensation until the parties have tried negotiating. The STB explained that, while the parties negotiate, it "expects Metra to continue to compensate UP for its use of the UP Lines so as to avoid any interim impairment to UP's financial interests." STB Order 32. It went on: "If the parties cannot reach agreement, and the Board is required to set interim terms and conditions governing Metra's access, there will be an accounting and reconciliation" and "UP will be reimbursed retroactively *(from July 1, 2025)* if the interim amount … is less than the final amount set." *Id.* (emphasis added). Based solely on this parenthetical, Metra says the STB has "exercised jurisdiction over the subject matter of this lawsuit—the amount of money Metra must pay UP for use of the UP Lines from July 1 to September 3, 2025." Metra Mot. 7.

Metra is mistaken. The parties did not brief, the STB did not analyze, and the agency had no need to decide whether it has power to set compensation retroactively. This issue will not arise unless and until negotiations break down and the STB is asked to set compensation. And this would be a significant, contested issue. "Retroactivity is not favored in the law," and retroactive agency action requires express statutory authorization—which is absent here. *See Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1988); *Velasquez-Garcia v. Holder*, 760 F.3d 571, 580–81 (7th Cir. 2014). The STB is well aware of these principles: "[R]etroactive actions that would impair rights a party possessed when it acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed" require "clear congressional intent." *Sanimax USA LLC v. Union Pac. R.R. Co.*, No. R 42171, 2022 WL 577808, at *4 (S.T.B. served Feb. 24, 2022) (cleaned up) (explaining that the agency would consider granting relief only

9

prospectively from the service date of a prior order establishing the governing law). Metra does the STB a disservice by assuming that it blithely (and incorrectly) resolved a novel and important jurisdictional issue that was not briefed, analyzed, or necessary to its decision. *Cf. Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 91 (1998) ("drive-by jurisdictional rulings … have no precedential effect").

To see how the agency actually decides a jurisdictional issue, look no further than the first several pages of the September 3 order, which thoroughly analyze the STB's authority to entertain Metra's application in the first place. *See* STB Order 4–11. The agency conducted no similar analysis of its power to set compensation retroactively for July 1–September 3. It did not need to decide that question, so it did not do so. At most, the STB *predicted* that, if the parties could not reach agreement, it would set compensation in future proceedings, including for this period if necessary. *See* STB Order 32.

Examining Metra's premise from another angle confirms the problem. Metra says Union Pacific must pursue its "disagreement" with the STB's supposed jurisdictional ruling "through a petition [for] review consistent with the Hobbs Act." Metra Mot. 9. But because the agency has entered no order and issued no relief with respect to the July 1–September 3 period, there is nothing for the Eighth Circuit to "hold unlawful and set aside," 5 U.S.C. § 706(2), to clear the way for a ruling on the COE's validity under state law. The Court cannot vacate the agency's prediction about what it might do *if* the parties' negotiations hit an impasse. *See Nat'l Treasury Emps. Union v. Vought*, 149 F.4th 762, 779 (D.C. Cir. 2025) ("[A]n agency plan is unreviewable insofar as it reflects only a nonbinding statement of something the agency intends to do in the future.").

In short, the STB did not "seize jurisdiction"—or do anything else—with respect to the two-month period *before* its order was issued and became "effective." *See* STB Order 33. That is

10

why the complaint says the decision does not purport to apply retroactively: Because it doesn't. *Contra* Metra Mot. 8. And that is reason enough to deny Metra's motion, since all its arguments depend on this supposed jurisdictional clash.

### C. Even if the agency asserted jurisdiction retroactively, there is no conflict.

Even accepting Metra's premise would not change the result. As noted, Metra contends that, by hearing the state-law contract claims in this case, the Court would be implicitly challenging the STB's assertion of jurisdiction to decide "what compensation applies from July 1 onward." *See* Metra Mot. 2–3. But that defines the issues far too generally.

The question in this Court is whether the parties formed, and Metra breached, a contract under Illinois common law. And the issue before the STB, if the parties' negotiations failed, would be the appropriate "compensation for use of the facilities under the principle controlling compensation in condemnation proceedings." 49 U.S.C. § 11102(a). To be sure, these questions concern the same general "subject matter," Metra Mot. 7, but topical overlap is not grounds for Hobbs Act preclusion. *See supra* § I.A. And answering the state-law question will not impugn the STB's exclusive authority to decide the statutory one.

What's more, the STB may need to know this Court's answer to the contractual question before it can determine whether it can set compensation under the statute. Union Pacific contends—and will argue to the STB, if this issue ever ripens there—that, even if the agency had the power to set terms retroactively to a date before its trackage-rights order, it could not do so by overriding a valid contract. Thus, if the STB is ultimately asked to set compensation covering July 1–September 3, it will need to know whether the COE is valid so it can assess the contract's effect on its power (if any) to set compensation for this period. And no one contends that the STB has already addressed *this* question.

11

And even if negotiations fail and the STB is asked to set compensation, there still won't be any conflicting results that could support Hobbs Act preclusion. If the STB ultimately concludes that it has the statutory power to override an otherwise-valid contract (and that conclusion is upheld on appeal), then this Court won't be "the final arbiter of compensation"; the STB will. *Contra* Metra Mot. 12. And if the STB lacks such a power, then whether Metra owes the amounts due on the COE will depend solely on this Court's ruling under state law.

Given all these differences, it is unsurprising that Metra cites no Hobbs Act cases even remotely like this one. Metra's many cited cases mostly stand for the unremarkable propositions that (i) "a challenge to an agency's exercise of authority belongs in" a court of appeals and (ii) a suit need not *directly* target an agency order to be an improper collateral attack. Metra Mot. 11–12 & n.8. Those points are too general to be helpful.

Even Metra's "particularly instructive" cases look nothing like this one. *Contra id.* at 11. In *Baros v. Texas Mexican Railway Co.*, the suit was barred because the plaintiffs sought a district court ruling on the *precise question* the agency had already decided against them—whether the railroad had abandoned a segment of track—a question that fell within the agency's exclusive statutory jurisdiction. 400 F.3d 228, 236–37 (5th Cir. 2005). The equivalent in this case would be Union Pacific seeking a declaration that Metra lacks terminal trackage rights, or that the STB lacked authority to grant them. There is nothing like that here.

Metra's cases involving "claims nominally related to enforcing putative agreements" are no more helpful. *See* Metra Mot. 12–13. In *Railway Labor Executives Ass'n v. Guilford Transportation Industries, Inc.*, the agency held that the railroad's union employees "were entitled to certain benefits" in connection with particular leases, but "further labor protection could [not] be reconciled" with those leases. 989 F.2d 9, 12 (1st Cir. 1993). Thus, the labor group could not

12

bring a new suit "asking the district court to make independent findings regarding the extent of labor protection which can be reconciled with the disputed leases"—the exact question the agency decided. *Id.*; *see also Bhd. of Loco. Eng'rs v. Bos. & Maine Corp.*, 788 F.2d 794, 801 (1st Cir. 1986) (no jurisdiction where the relief sought in district court "would have reversed the ICC order"); *Suburban O'Hare Comm'n v. Dole*, 603 F. Supp. 1013, 1014, 1025–27 (N.D. Ill. 1985) (district court lacked authority over suit "challeng[ing] an adjudicatory decision of the FAA").

Here, by contrast, Union Pacific does not ask the Court to do anything that would contradict what the STB has ordered. Dismissal would be improper.

**II.     The Court should deny Metra's alternative request for a stay.**

For similar reasons, a stay is unwarranted. "[W]hen considering a request for a stay, courts should be mindful of the Supreme Court's admonition, stated repeatedly by the Court of Appeals for the Seventh Circuit, that federal courts have a 'virtually unflagging obligation' absent 'exceptional circumstances' to exercise jurisdiction when a case is properly before [them]." *Grice Eng'g, Inc. v. JG Innovations, Inc.*, 691 F. Supp. 2d 915, 920 (W.D. Wis. 2010) (citing cases). This is not such an exceptional case.

As explained above, this action and the STB proceeding are parallel, independent parts of a broader dispute. Letting a future STB compensation proceeding run its course will not obviate the need to decide the contractual issues here; rather, deciding the contract claims may be necessary for the STB to assess the extent of its own authority. *See Grice*, 691 F. Supp. 2d at 921 (denying a stay in favor of parallel proceedings because it was "far from clear whether the state court decision will resolve or simplify the issues of this case").

In urging a stay, Metra again describes the issues too abstractly. It says a stay is required because "the STB determined that *this dispute* is within its exclusive jurisdiction." Metra Mot. 13 (emphasis added). But "this dispute"—the issue in this case—is whether the COE became a

13

binding contract under Illinois law on July 1. The STB has not addressed that question and will not do so. Contractual issues are beyond its "exclusive jurisdiction" or "expertise." *Contra id.* at 13–14.

And while Metra says the STB proceeding "already is underway," *id.* at 13, that implies the agency is moving toward a resolution that would shed light on the questions here. It is not. Union Pacific and Metra are still negotiating over prospective conditions and compensation, and the STB is currently awaiting the results. So the compensation phase of the STB proceeding, if one is ever coming, has not even started yet. In seeking a stay "pending final resolution of the STB proceeding, and any resulting judicial review," Metra Mot. 15, Metra is thus asking for an indefinite, likely-years-long delay in favor of a proceeding that has not yet begun. *Cf. Grice*, 691 F. Supp. 2d at 921 ("plaintiff would be prejudiced by a stay because it is uncertain when the [parallel] appeal will be resolved"). Anyway, as explained, the issues the STB might eventually decide are distinct from those presented here.

In claiming otherwise, Metra tries a triple bank shot. It says that if Union Pacific's contract claims go forward, then Metra will raise an unconscionability defense, and one aspect of substantive unconscionability considers commercial reasonableness, so to resolve Metra's unconscionability defense, "this Court would need to determine whether the COE is commercially reasonable," and the STB "is the appropriate arbiter of the reasonableness of rail rates." Metra Mot. 14–15. But the issue the STB *might* eventually address is not whether any particular rate is "reasonable," but what is the appropriate "compensation for use of the facilities under the principle controlling compensation in condemnation proceedings." 49 U.S.C. § 11102(a). Metra does not claim that federal condemnation valuation principles and Illinois common-law substantive-unconscionability principles bear any relation to each other.

14

Regardless, a range of possible outcomes can be reasonable, so an STB decision adopting one value for Metra's use of Union Pacific's lines does not mean a different figure is *un*reasonable—let alone unconscionable. The same point distinguishes Union Pacific's unjust-enrichment claim, which the Court need not even reach unless the COE is invalid. *Contra* Metra Mot. 14.

Finally, Metra is wrong to claim that Union Pacific would suffer no prejudice because "[o]nly run-of-the-mill economic damages are at stake, which UP may recoup in the STB proceeding." Metra Mot. 15. Union Pacific cannot enforce the COE in the STB proceeding; if it tried to do so, the STB would send it back here. So Union Pacific cannot recoup the contractually owed amounts before the agency. Indeed, Metra seems to be suggesting that Union Pacific abandon its contractual rights under the COE and instead try to recover the same amounts from the STB under the statutory compensation standard. That option hardly shows a lack of prejudice. Union Pacific alleges (and Metra's motion does not dispute) that Metra *already owes* Union Pacific millions of dollars in unpaid fees under the COE, which are overdue. Scrapping those vested contractual rights so Union Pacific can start from scratch before the STB under a different legal test would be prejudicial and inefficient.

In any event, the COE's validity is not just about compensation. The COE sets terms governing various aspects of the Metra–Union Pacific relationship, including (as Metra notes) indemnity. For example, if a Metra passenger injured between July 1 and September 3 sues Union Pacific because it owns the property where the injury happened, whether Metra must defend and indemnity Union Pacific will depend on the COE's validity. Metra does not contend that the STB has resolved or will resolve issues like this.

15

Because the STB does not have exclusive jurisdiction over the issues raised here, and because the burdens of a stay outweigh the benefits, the Court should deny Metra's request for a lengthy, indefinite stay.

## CONCLUSION

For these reasons, the Court should deny Metra's motion to dismiss or stay.

November 20, 2025

Respectfully submitted,

*/s/ Bruce R. Braun*
Bruce R. Braun
Charles K. Schafer
Andrew F. Rodheim
SIDLEY AUSTIN LLP
1 South Dearborn
Chicago, Illinois 60603
312-853-7000
bbraun@sidley.com
cschafer@sidley.com
arodheim@sidley.com

Raymond A. Atkins (*pro hac vice*)
Tobias S. Loss-Eaton (*pro hac vice*)
Ogemdi Maduike (*pro hac vice*)
SIDLEY AUSTIN LLP
1501 K Street NW
Washington, DC 20005
202-736-8000
ratkins@sidley.com
tlosseaton@sidley.com
oge.maduike@sidley.com

*Counsel for Plaintiff*
*Union Pacific Railroad Company*