**UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS EASTERN DIVISION**

| | |
|---|---|
| Union Pacific Railroad Company,<br><br>　　　　　　　　　　　　Plaintiff,<br><br>v.<br><br>Commuter Rail Division of the Regional Transportation Authority, d/b/a Metra<br><br>　　　　　　　　　　　　Defendant. | C.A. No. 25-cv-10785 |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANT METRA'S MOTION TO DISMISS OR,
IN THE ALTERNATIVE, STAY PROCEEDINGS**

Matthew Madden
McDermott Will & Schulte LLP
444 West Lake Street
Chicago, IL 60606-0029
(312) 984-3273
mmadden@mwe.com

Paul W. Hughes (*pro hac vice*)
Mary H. Schnoor (*pro hac vice*)
Emmett Witkovsky-Eldred (*pro hac vice*)
McDermott Will & Schulte LLP
500 North Capitol Street NW
Washington, DC 20001
(202) 756-8000
phughes@mwe.com

*Counsel for Defendant Commuter Rail Division of the Regional Transportation Authority, d/b/a Metra*

**TABLE OF CONTENTS**

Introduction ..........................................................................................................................................1
Argument ............................................................................................................................................3
I.    The Court lacks subject matter jurisdiction to adjudicate UP's collateral attack on the STB Decision. ............................................................................................................3
      A.    The STB determined it has jurisdiction from July 1, 2025. ..........................................4
      B.    UP's requested relief contradicts the STB Decision. ....................................................9
II.    In the alternative, the Court should stay. ...........................................................................13
Conclusion ........................................................................................................................................15

i

## TABLE OF AUTHORITIES

**Cases**

*Association v. Guilford Transportation. Industries, Inc.*,
  989 F.2d 9 (1st Cir. 1993) ................................................................................................... 12

*Assure Competitive Transp., Inc. v. United States*,
  629 F.2d 467 (7th Cir. 1980) ..................................................................................... 3, 4, 9, 11

*AT&T v. F.C.C.*,
  454 F.3d 329 (D.C. Cir. 2006) ............................................................................................... 8

*Baros v. Texas Mexican Railway Co.*,
  400 F.3d 228 (5th Cir. 2005) ............................................................................................... 11

*Bowen v. Georgetown Univ. Hosp.*,
  488 U.S. 204 (1988) ........................................................................................................... 7, 8

*Brotherhood of Locomotive Engineers v. Boston & Maine Corp.*,
  788 F.2d 794 (1st Cir. 1986) ................................................................................................ 12

*Dave v. Rails–to–Trails Conservancy*,
  79 F.3d 940 (9th Cir. 1996) ................................................................................................. 12

*F.C.C. v. ITT World Commc'ns, Inc.*,
  466 U.S. 463 (1984) ......................................................................................................... 3, 13

*Grice Eng'g, Inc. v. JG Innovations, Inc.*,
  691 F. Supp. 2d 915 (W.D. Wis. 2010) ............................................................................... 13

*Island Creek Coal Sales Co. v. ICC*,
  561 F.2d 1219 (6th Cir. 1977) ............................................................................................. 13

*Johnson v. Copyright Royalty Bd.*,
  969 F.3d 363 (D.C. Cir. 2020) ............................................................................................... 8

*Qwest Servs. Corp. v. F.C.C.*,
  509 F.3d 531 (D.C. Cir. 2007) ............................................................................................... 8

*S. Pac. Transp. Co. v. ICC*,
  736 F.2d 708 (D.C. Cir. 1984) ............................................................................................... 5

*Sanimax USA LLC v. Union Pacific Railroad Co.*,
  2022 WL 577808 (STB 2022) ........................................................................................... 8, 9

*Suburban O'Hare Comm'n v. Dole*,
  603 F. Supp. 1013 (N.D. Ill. 1985) ...................................................................................... 12

*Transcon. & W. Air v. Civ. Aeronautics Bd.*,
  169 F.2d 893 (D.C. Cir. 1948) ............................................................................................... 8

*Velasquez-Garcia v. Holder*,
  760 F.3d 571 (7th Cir. 2014) ................................................................................................. 8

*Venner v. Michigan Cent. R.R. Co.*,
  271 U.S. 127 (1926) ............................................................................................................ 12

**Cases—continued**

*Verizon Tel. Cos. v. F.C.C.*,
 269 F.3d 1098 (D.C. Cir. 2001) ................................................................................ 8

*Victor Oolitic Stone Co. v. CSX Transp., Inc.*,
 852 F. Supp. 721 (S.D. Ind. 1994) ......................................................................... 12

**Statutes**

28 U.S.C. § 2342(7) ........................................................................................................ 3

49 U.S.C.

 § 10501(b) ............................................................................................................ 10, 11

 § 11102(a) .................................................................................................................... 5

 § 11102(d) .................................................................................................................. 13

## INTRODUCTION

UP's complaint should be dismissed or stayed until the STB proceeding has concluded. UP lost at the STB, and within *days* turned to this Court to try to unwind part of what the STB ordered. This action is an improper collateral attack: It would displace the STB-ordered statutory process for setting the compensation Metra owes UP from July 1, 2025 onward, and it depends on overturning the STB's exercise of jurisdiction during this period. Under the Hobbs Act, Congress entrusted review of STB orders exclusively to the circuit courts. This Court lacks jurisdiction over UP's effort to set aside the STB's decision by other means.

*First*, as UP's opposition confirms, its entire complaint rests on an objective misreading of the STB's September 3, 2025 decision. The STB did not "predict[]" or "suggest[]" that it "*might*" order Metra to pay a certain level of compensation from July 1 onward (*e.g.*, Opp. (Dkt. 37) at 2, 3, 7, 9); it "pledge[d]" that it "will" do exactly that (STB Decision (Dkt. 35-1) at 31-32). One simply can read what the STB said:

> [C]onsistent with controlling precedent, the Board *pledges* that, if UP and Metra cannot reach agreement respecting compensation terms, it *will* set appropriate terms under condemnation principles *with retroactive effect*[.]
>
> * * *
>
> If the parties cannot reach agreement, and the Board is required to set interim terms and conditions governing Metra's access, there *will* be an accounting and reconciliation when final terms are set. UP *will* be reimbursed *retroactively (from July 1, 2025)* if the interim amount paid by Metra is less than the final amount set.

STB Decision at 31-32 (emphasis added). On December 1, 2025, Metra petitioned the STB to set final compensation and conditions of use. Ex. 8. The STB, thus, is on course to do just what it pledged to do: determine what Metra owes UP for use of the UP Lines, including during the full period at issue in UP's complaint.

Tellingly, UP also argues that the STB lacks the authority to do what it pledged. That UP

1

defends its complaint by contesting the STB's ability to set compensation during the challenged period proves the point: UP's complaint is a collateral attack on the STB Decision. The STB ordered a process to resolve compensation from July 1 onward. An STB decision on that very question is now forthcoming. But UP does not want the STB to decide the matter, so it contends that the STB lacks that power. These arguments against agency-ordered relief and an agency's determination of its own jurisdiction belong solely in a Hobbs Act petition for review, not in a collateral district court proceeding aiming to obtain a contradictory remedy.

*Second*, UP argues that, even if the STB did exercise jurisdiction from July 1, 2025, its complaint about contract validity is unrelated to the issues before the STB. Not so. UP's complaint requests relief that would directly conflict with the STB-ordered process regarding the compensation Metra owes UP. More than that, it would subvert the agency's exercise of jurisdiction by foisting on Metra UP's unilateral terms for use of the UP Lines notwithstanding the STB's exclusive jurisdiction over the process for establishing conditions of use during the challenged period. Despite dressing up its theory as a contract claim, UP's complaint has everything to do with *when* the STB exercise exclusive jurisdiction over the compensation question and *what* the STB said it would do pursuant to its jurisdiction. The STB found jurisdiction from at least July 1 onward, and, pursuant to that exclusive authority, it ordered the parties to negotiate terms, or else be bound by the conditions and compensation the agency sets. For UP to prevail in its contract claim, it would have to show that the STB's assertion of jurisdiction as of July 1 was in error. But that question is for a court of appeals to decide pursuant to a Hobbs Act petition.

At a minimum, UP's opposition confirms that a stay is appropriate until the STB's adjudication of proper compensation (which is already underway) has concluded. Proceeding with this case—when the STB might moot it entirely—is a poor use of judicial and party

resources. UP's arguments—particularly its previewed effort to ask the STB to backtrack on its assertion of jurisdiction during the ongoing second phase of the proceeding—show why the Court must reserve decision until the STB adjudication is completed. Accordingly, if the Court does not dismiss, it should hold UP's complaint in abeyance.

## ARGUMENT

UP disagrees with the STB Decision. It does not want the STB to set compensation from July 1 onward. So, once the STB stated that it will do so, UP rushed to this Court to nullify that result and undercut the agency's jurisdiction, even as it also sought review in the Eighth Circuit under the Hobbs Act. The Court should dismiss this collateral attack. In the alternative, the Court should stay this case pending completion of the pending STB proceeding.

**I.     THE COURT LACKS SUBJECT MATTER JURISDICTION TO ADJUDICATE UP'S COLLATERAL ATTACK ON THE STB DECISION.**

A district court lacks jurisdiction to entertain challenges to agency decisions exclusively reviewable in a court of appeals pursuant to the Hobbs Act. *See* 28 U.S.C. § 2342(7); Mot. (Dkt. 35) 9-10. UP agrees—as it must—that "[t]he statute thus bars collateral attacks—suits whose 'practical effect' would be to 'contradict or countermand [the agency] order.'" Opp. 7 (quoting *Assure Competitive Transp., Inc. v. United States*, 629 F.2d 467, 472 (7th Cir. 1980) ("*ACT*")).

UP's complaint is just such a collateral attack. *See* Mot. 10-13. Though it styles the issues differently than those presented in the STB proceeding—calling them contract claims—the "gravamen" of UP's complaint "[i]n substance" "request[s] the District Court to enjoin action that is the outcome of the agency's order." *F.C.C. v. ITT World Commc'ns, Inc.*, 466 U.S. 463, 468 & n.5 (1984). That is, deciding in UP's favor would necessarily set aside the STB's decision

3

regarding the process for establishing what Metra owes UP during the challenged period.[1] It would undermine the STB's determination that either the parties negotiate that issue or else the agency "*will*" conduct an "accounting and reconciliation when final terms are set" so "UP *will* be reimbursed *retroactively (from July 1, 2025)*." STB Decision at 32 (emphasis added). More, it would undermine the STB's assertion of jurisdiction over that period: If the STB possesses exclusive jurisdiction from July 1, 2025, UP could not unilaterally impose terms on Metra or ask this Court to enforce them. *See* Mot. 11-12.

In short, UP's complaint would in "practical effect" "contradict or countermand [the agency] order" in those respects. *ACT*, 629 F.2d at 472.

UP's counterarguments boil down to two points: (1) the STB Decision, in UP's view, has only prospective effect and does not—and could not—address the issue of the compensation Metra owes UP between July 1 and September 3 (Opp. 8-11) and (2) UP's complaint and the STB proceeding concern different issues, so even if the agency *did* assert jurisdiction during this period, there is no conflict (*id.* at 7-8, 11-13). UP is wrong on both points.

A. **The STB determined it has jurisdiction from July 1, 2025.**

**1.** UP argues that the "[t]he STB did nothing—jurisdictional or otherwise—with respect to the July 1-September 3 period." Opp. 9. But that argument—echoing the facially incorrect allegation that "[t]he STB's decision does not purport to apply retroactively in any way" (Compl. ¶ 63) is disproved by the STB Decision's plain text, which "pledge[s]" that the STB "*will* set appropriate terms … *with retroactive effect*" and says "UP *will* be reimbursed *retroactively (from July 1, 2025)* if the interim amount paid by Metra is less than the final amount set." STB

---

[1] The end result of that agency-ordered statutory process will be a trackage rights agreement that—whether agreed or ordered by an STB decision—will run from July 1, 2025.

Decision at 31-32 (emphasis added).

Though UP dismisses this part of the STB Decision as a "blink-and-you'll-miss-it parenthetical" (Opp. 2), the agency's determination is explicit and substantial. The STB's promise to set compensation from July 1, 2025 anchors its lengthy discussion of the issue of "Adequate Security," a statutory prerequisite for Metra's use of the UP Lines. *See* STB Decision at 30-32; *see also* 49 U.S.C. § 11102(a). As the STB explained, its "pledge[]" to "set appropriate terms under condemnation principles with retroactive effect" is the central and essential premise of its conclusion that UP's right to just compensation under the statute is adequately secured, as Congress required, such that Metra can continue to operate on the UP Lines. STB Decision at 31. This approach, the STB explained, was long ago blessed by the D.C. Circuit, "remains good law[,] and has not been questioned in any subsequent decision by that court or another appellate tribunal." *Id.* (citing *S. Pac. Transp. Co. v. ICC*, 736 F.2d 708, 723 (D.C. Cir. 1984)). The STB's determination that that compensation period begins on July 1 (*id.* at 32) is not a "drive-by jurisdictional ruling[]" (Opp. 10)—it is the STB's critical demarcation of the date from which UP's compensation must be adequately secured, if needed, by a retroactive true-up. For the STB to require Metra to pay statutorily defined compensation from a specific date, it must have had and asserted jurisdiction, as of that date.

UP notes that one paragraph from the "decretal language" of the STB Decision states the order is "effective on the date of service." Opp. 7, 9 (citing STB Decision at 34). This language does not mean, as UP argues, that the STB meant the entire order to have effect only from September 3, 2025. The STB "[d]ecided" the case on "September 2, 2025" but did not serve the decision until September 3. STB Decision at 1. The statement UP highlights simply clarifies the decision's operative date. UP also disregards the STB's earlier decretal statement, that "Metra's application for terminal trackage rights is granted *as discussed above*." *Id.* at 33 (emphasis

5

added). That discussion includes the STB's determination regarding retroactive compensation, the centerpiece of its statutory adequate-security analysis. *See supra* at 5.

UP points to nothing in the STB Decision to support its recasting of the agency's determination regarding compensation from July 1, 2025 as nothing more than a "predict[ion]" or "suggest[ion]" of what the agency *might* do if called upon to set compensation. Opp. 6, 10. The agency was unequivocal: "UP *will* be reimbursed *retroactively (from July 1, 2025)*." STB Decision at 32 (emphasis added). To be sure, whether the agency would *need* to take this step was contingent on the parties, as the STB "expect[ed] and encourage[ed]" Metra and UP to negotiate over the compensation Metra owes UP for use of the UP Lines—from July 1 onward. *Id.* at 33. But Metra's point is not that the STB ordered a specific compensation amount. Rather, by asserting jurisdiction from July 1 onward, the STB dictated the only process by which compensation will be set for that period. *Id.* at 32.

On December 1, 2025, Metra asked the STB to set final compensation; thus, any doubts UP may have entertained regarding whether the STB will order compensation are no more. Ex. 8. Nor is there any doubt regarding the start date of the STB-ordered compensation period. That date is July 1, 2025. STB Decision at 32. UP complains that the proper start date of the compensation period—and the STB's authority to set that date as July 1, 2025—was not briefed. Opp. 9. UP can raise such arguments in a Hobbs Act appeal. For the purposes of this case, whether the issue was briefed does not affect what the STB decided.

And, though UP argues to this Court that it cannot yet seek review of the STB's decision to find jurisdiction as of July 1, 2025 (Opp. 10), that supposed obstacle has not stopped UP from arguing to the Eighth Circuit that the STB's "'pledge[]'" that it "'will set appropriate terms' at some future time 'with retroactive effect'" (Dkt. 35-4 at 10) rests on "untested" authority (*id.* at 4) and that retroactively "address[ing] compensation *after* use has begun" violates the statute (*id.*

6

at 15). UP now says it intends to belatedly raise such arguments with the STB in the ongoing compensation proceeding. Opp. 9. It is UP's right to try. If the STB stands by its prior decision to set compensation as of July 1, 2025, UP might again petition for review. What it cannot do is ask this Court to countermand the STB's decision as to the date it seized jurisdiction or from when compensation should be trued up.

UP's related contention that this issue was not briefed also is not entirely accurate. Though the parties did not specifically grapple over the STB's authority to dictate compensation terms as of July 1, 2025, the STB noted in its decision that both parties "propose[d] true-up mechanisms" that would satisfy the adequate security requirement by retroactively reconciling interim compensation with the final amount. STB Decision at 32. Metra specifically proposed July 1, 2025 as the appropriate date. Ex. 9 at 3. Though the STB did not adopt the substance of either party's proposed interim conditions, it agreed with both UP and Metra that a retroactive true-up was appropriate, and it set the reconciliation date as July 1, 2025, as Metra asked.

**2.** UP goes further and argues that the STB *could not* have seized jurisdiction as of July 1, 2025 because it lacks that authority. Opp. 9-10. UP says this is a "significant, contested issue" because "[r]etroactivity is not favored in the law," and thus the STB asserting jurisdiction as of July 1, 2025 is an "incorrect[] resol[ution of] a novel and important jurisdictional issue." *Id.* (quoting *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1988)).

That UP must defend its complaint by challenging the STB's authority to exercise jurisdiction from July 1, 2025 onward merely proves Metra's point. UP's complaint depends on the STB not having jurisdiction from July 1 through September 3 to set compensation. Because, under the STB Decision's plain text, the STB seized the jurisdiction to take that action (*see supra* at 4-6), UP is left to argue that the STB was *incorrect*. But the only proper forum for UP's complaint that the STB improperly exercised its authority is the court of appeals.

7

Moreover, nothing here *is* retroactive in the way the cases UP cites mean. Metra filed its petition for terminal trackage rights on March 7, 2025, and the period at issue—July 1 to September 3—occurred *after* the petition was filed. *See, e.g.*, *Transcon. & W. Air v. Civ. Aeronautics Bd.*, 169 F.2d 893, 895 (D.C. Cir. 1948) (distinguishing between the ICC's power to "make its orders effective as of the date of the beginning of the proceedings" and "retroactive power"); *Johnson v. Copyright Royalty Bd.*, 969 F.3d 363, 380 (D.C. Cir. 2020) (a rule with an effective date prior to the final rulemaking, but after the proposed rulemaking proposing that effective date, was not impermissibly retroactive). To the extent that there are constitutional limitations on retroactive application of agency action, it is for reaching conduct that occurred pre-petition. *Bowen*, for instance, concerned agency rulemaking that proposed to promulgate a rule with an effective date three years earlier than the rulemaking commenced. 488 U.S. at 207.

Further, and contrary to UP's argument, "[r]etroactivity is the norm in agency adjudications no less than in judicial adjudications." *Qwest Servs. Corp. v. F.C.C.*, 509 F.3d 531, 539 (D.C. Cir. 2007). This "presumption of retroactivity for adjudications" (*id.*) applies unless the agency "alters an established rule defining permissible conduct" or retroactivity "would lead to 'manifest injustice.'" *AT&T v. F.C.C.*, 454 F.3d 329, 332 (D.C. Cir. 2006) (quoting *Verizon Tel. Cos. v. F.C.C.*, 269 F.3d 1098, 1109 (D.C. Cir. 2001)). There is nothing remarkable about an agency ordering relief beginning on a date *after* the adjudication commenced.

UP's cases are not to the contrary. *Bowen* remarks that "[r]etroactivity is not favored in the law" with respect to "administrative rules," not adjudications. 488 U.S. at 208. *Velasquez-Garcia v. Holder* states that an "agency rule" is presumed not to apply retroactively, even when announced in an adjudication, but adds that "retroactive application" remains the norm with respect to "the litigant whose case gave rise to the new rule." 760 F.3d 571, 580 (7th Cir. 2014). In *Sanimax USA LLC v. Union Pacific Railroad Co.*, the STB refrained from ordering relief

8

predating the service date of a prior order because that order overturned applicability of an exemption, so retroactive application "would 'impair rights a party possessed when it acted.'" No. R 42171, 2022 WL 577808, *4 (STB 2022). There is no similar concern here.

UP well knows that retroactive relief in terminal trackage rights cases is uncontroversial. In another pending case before the agency, UP itself has *urged* the STB to award such relief, arguing that "[r]etroactive compensation is common where one railroad is required to provide another railroad access to its facilities." Ex. 10 at 16 & n.57.

B. **UP's requested relief contradicts the STB Decision.**

UP argues, in the alternative, that even if the STB *did* seize jurisdiction as of July 1, 2025, the relief it requests here, and the relief the STB ordered, do not conflict. Opp. 7-8, 11-13. None of UP's arguments against a conflict are correct.

UP argues that there is "no contradiction between the two" cases because "[t]he STB decided Metra's statutory rights as of September 3 and ordered the parties to negotiate terms going forward," whereas "this case concerns the parties' contractual rights and obligations during July and August." Opp. 7. This argument depends entirely on UP's view that the STB Decision does not assert jurisdiction as of July 1, 2025, or have anything to say about the compensation Metra owes UP during the challenged period. As displayed in plain English on page 32 of the STB Decision—that view is incorrect. *Supra* at 4-6.

UP also argues that the relief ordered by the STB "did not address" the COE's validity, "[n]or will it," because the STB does not interpret private contracts. Opp. 8. That argument misses the point. UP's complaint "countermand[s]" the STB Decision (*ACT,* 629 F.2d at 472) in two ways. *First*, UP's requested contract remedies directly conflict with the STB's decision regarding compensation from July 1 through September 3. The STB ordered a specific process to determine compensation for that period: it directed the parties to negotiate compensation, or else

9

the STB will set compensation from July 1 onward. STB Decision at 32. UP, by contrast, seeks a declaration that *it*, via the COE, unilaterally established compensation during that period, with neither Metra nor the STB having any say on the process or amount.

*Second*, UP's effort to enforce the COE is irreconcilable with the STB's assertion of jurisdiction as of at least July 1, 2025. One rail carrier cannot subvert the STB's exclusive jurisdiction by unilaterally imposing terms and conditions on another while both are subject to the agency's authority. The COE—which UP attempted to force on Metra after Metra initiated the STB proceeding and sought to enforce here only after *losing* the STB proceeding—is UP's attempt to do just that. The "exclusiv[ity]" of the STB's jurisdiction (49 U.S.C. § 10501(b)) prevents such a ploy. *See* Mot. 7-9.

This conflict is thus no mere "topical overlap." *Contra* Opp. 11. If UP obtains a judgment ordering Metra to pay the COE-demanded compensation between July 1 and September 3, it will have thwarted the STB's exclusive jurisdiction and nullified the specific compensation-setting process the STB ordered. UP's complaint does "impugn the STB's exclusive authority." *Id*.

UP next argues that "the STB may need to know this Court's answer to the contractual question before it can determine whether it can set compensation under the statute." Opp. 11. UP has it backward. The STB *already* determined it can set compensation. It "pledge[d]" that it "will" do that. STB Decision at 31-32. And it did so fully aware of the COE. *See, e.g., id.* at 28 & n.59 (observing that UP is wrong to "imply that the COE is a private consensual arrangement" and questioning whether "the COE is a contract" at all).[2] UP previews that it will argue to the

---

[2] The STB, in fact, relied on the COE to explain why terminal trackage rights were necessary in the first place. As the STB stated: "UP maintains that its decisions about whether to allow— and, if so, on what terms to allow—Metra future access to the UP Lines would be at UP's sole discretion" and making "Metra's heavily trafficked public commuter rail service … subject to unreviewable terms and pricing set unilaterally by UP … is not adequate" to serve the public

STB that the agency lacks the authority to "overrid[e] a valid contract." Opp. 11. The COE's alleged validity under Illinois law is irrelevant to a determination of the agency's authority, however. All that matters is the scope of the STB's statutory jurisdiction, which is "exclusive." 49 U.S.C. § 10501(b). If the STB determines that it possesses jurisdiction that is the end of the question, pending Hobbs Act review.

At bottom, UP's arguments reduce to the claim that, because UP's complaint presents a contract claim, it cannot be a collateral attack on the STB's statutory order. But UP acknowledges, as it must, the "unremarkable proposition[]" that "a suit need not directly target an agency order to be an improper collateral attack." Opp. 12. As explained (*supra* at 9-10), the "practical effect" of a ruling for UP would "contradict or countermand [the STB's] order." *ACT*, 629 F.2d at 470-472. Time and again, courts have rejected improper collateral attacks on agency orders even when the issues in the two proceedings differ. *See* Mot. 10, 12 n.8 (collecting cases).

UP fails to distinguish these cases. It claims that *Baros v. Texas Mexican Railway Co.*, 400 F.3d 228, 236-237 (5th Cir. 2005), is inapposite because the plaintiffs there asked the district court to answer the "precise question the agency had already decided against them." Opp. 12. The same description applies here. The plaintiffs in *Baros* brought state-law claims that had the "practical effect" of challenging an "implicit decision" of the STB—implied by how the STB exercised its jurisdiction—rendered under a separate statutory framework. 400 F.3d at 236-237. The Fifth Circuit pierced the veil of the supposedly distinct state-law theories in which the plaintiffs dressed up their claims and examined how, practically, relief in their favor would undermine the STB's approach. Here, when the STB stated that it will determine what Metra owes UP from July 1, it implicitly determined that it has jurisdiction over that period. UP's effort

---

interest. STB Decision at 28-30.

11

to enforce the COE depends on the STB lacking exclusive jurisdiction from July 1 through September 3, including the power to set the *only* process for setting compensation for that period—negotiation or STB determination—by instead substituting the COE.

The remaining cases UP brushes aside also are instructive. In *Railway Labor Executives' Association v. Guilford Transportation. Industries, Inc.*, 989 F.2d 9, 12-13 (1st Cir. 1993), the plaintiffs sought to enforce statutory and collective bargaining rights beyond the "certain benefits" they secured from the ICC in a prior ruling. *Id*. at 12. Here, UP's challenge is a direct attack on the STB's decision. UP does not just seek to go "further" than the STB did (*id*.), it seeks to nullify the statutory process the STB ordered for setting compensation and replace it with the COE. *Brotherhood of Locomotive Engineers v. Boston & Maine Corp.*, 788 F.2d 794, 799-802 (1st Cir. 1986), is similar. Additionally, the plaintiffs in that case sought to obscure their collateral attack by contending that the ICC "did not exercise its power [to exempt rail transactions from regulation under the Railroad Labor Act] in this case." UP tries the same thing here by arguing that it cannot be collaterally attacking the STB's assertion of jurisdiction over the challenged period because the STB made no such assertion. Opp. 8-11. Just as in *Boston & Maine*, UP is wrong in its description of the STB Order (*see supra* at 4-6), and its complaint "in essence" attacks that order. 788 F.2d at 801. *See also Suburban O'Hare Comm'n v. Dole*, 603 F. Supp. 1013, 1016-1019 (N.D. Ill. 1985) (rejecting effort to nullify agency order by seeking to enforce an unrelated consent decree).

UP does not attempt to address several other on-point cases Metra cited, involving complaints deemed improper collateral attacks even though, like here, they advanced nominally distinct state-law claims (*see Venner v. Michigan Cent. R.R. Co.,* 271 U.S. 127, 129-131 (1926); *Dave v. Rails–to–Trails Conservancy*, 79 F.3d 940, 942 (9th Cir. 1996); *Victor Oolitic Stone Co. v. CSX Transp., Inc.*, 852 F. Supp. 721, 723 (S.D. Ind. 1994)), or where awarding the relief

12

sought would have subverted the agency's exercise of its authority (*see ITT World Commc'ns*, 466 U.S. at 468; *Island Creek Coal Sales Co. v. ICC,* 561 F.2d 1219, 1222 (6th Cir. 1977)).

## II. IN THE ALTERNATIVE, THE COURT SHOULD STAY.

Alternatively, the Court should stay the case until the STB proceeding has run its course. Mot. 13-15. A stay promotes judicial economy, respects the STB's expertise, will preserve party resources, and will crystallize issues in this dispute, if not moot them.

UP argues otherwise by invoking the Court's "obligation" to "exercise jurisdiction when a case is properly before [it]." Opp. 13 (quoting *Grice Eng'g, Inc. v. JG Innovations, Inc.*, 691 F. Supp. 2d 915, 920 (W.D. Wis. 2010)). Metra has explained, however, why this case is *not* properly before the Court. *Supra* at 3-12. Where the Court's jurisdiction is in doubt, a stay that might allow the case to become moot—and certainly will clarify the jurisdictional questions—is wise. In any event, the framework in *Grice* points in favor of a stay. *See* 691 F. Supp. 2d at 920. This litigation is "at an early stage," and, as Metra has shown, a stay would not "unduly prejudice or tactically disadvantage" UP, it will "simplify the issues in question and streamline the trial," and it will "reduce the burden of litigation on the parties and on the court." *Id.*

UP's remaining arguments against a stay carry even less force. UP says that the "compensation phase of the STB proceeding, if one is ever coming, has not even started yet" (Opp. 14), but that statement is inaccurate. As noted, Metra petitioned the STB to set conditions of use and compensation on December 1, 2025 (and had advised UP prior to the filing date for UP's opposition that Metra would be petitioning the STB in December 2025, if an agreement between the two sides had not been reached). Ex. 8. There is thus no risk of an indefinite let alone "likely-years-long delay." Opp. 14. By statute, the STB must resolve Metra's petition within 180 days, and Metra has proposed a schedule in accordance with that requirement. *See* Ex. 8 at 6; *see also* 49 U.S.C. § 11102(d).

13

UP also argues that the issues in the two matters are distinct (Opp. 13-14), but, as discussed (*supra* at 9-10), UP is wrong. UP's complaint concerns the compensation owed by Metra for use of the UP Lines between July 1 and September 3. The pending STB proceeding likewise involves the compensation Metra owes, including during that same period. UP's opposition further demonstrates how much these cases overlap, as it previews arguments UP intends to make to the STB that bear directly on the relief it seeks here. For instance, UP states that it intends to argue that the agency lacks the authority to set compensation between July 1 and September 3 because, in UP's view, the agency cannot order retroactive relief (Opp. 9-10) or override a contract (*id.* at 11). The STB has already determined that it can (and "will") order compensation from July 1 (STB Order at 32), and allowing the STB to address that question head-on, at UP's invitation, would redress UP's lingering uncertainty regarding the scope of its regulator's asserted jurisdiction.

Similarly, an STB proceeding on compensation would give the Court a reference point for the reasonableness of UP's proposed rate under the COE—an issue on which the STB is indisputably expert, and which is interrelated with the claims and defenses in this case. Mot. 14-15. UP expresses doubt that an STB determination on the "appropriate" rate for Metra's use of the UP Lines would have any relationship to a commercially "reasonable" rate (Opp. 14), but the connection is plain. If the COE demands a rate far above what the STB deems reasonable under standards rooted in industry practices and benchmarks, the agency's determination would inform the Court's on whether the rate would be substantively unconscionable. If nothing else, allowing the parties to first litigate rate reasonableness before the STB, rather than force them to pursue the issue in both forums simultaneously, is a better use of party and public resources.

UP also would not be prejudiced by a stay. Metra is currently compensating UP for its use of UP's property—as it always has. Compl. ¶ 57. More, the STB has guaranteed that UP in

the end will recoup whatever compensation it is fairly owed in full. STB Order at 32. The principal "prejudice" UP complains about is delay in its recovery, *assuming* it actually could enforce the COE. Opp. 15. But *if* UP were entitled to recover under the COE (it is not, for all the reasons discussed), a short delay is no hardship, particularly if UP also were successful in enforcing the COE's interest provision. Dkt. 1-1 at 4. In the meantime, it is hardly prejudicial to UP to participate in the STB's compensation-setting process, in which UP will have the opportunity to defend the level of compensation it believes Metra owes.

UP last argues that a stay will create uncertainty regarding indemnity and liability. Opp. 15. UP implies that "the STB has [not] resolved [n]or will resolve issues like this" (*id.*), but UP again is incorrect. The STB Decision is clear (at 32 n.65) that the agency can provide guidance on such issues if either party asks. UP *has* asked the STB to impose an interim condition governing indemnity and liability (Dkt. 35-5), and the agency promptly did (Dkt. 35-6). The STB has now finalized that interim condition. Ex. 11 at 4.

## CONCLUSION

The Court should dismiss this action or stay the case pending the STB proceeding.

Dated: December 8, 2025

Matthew Madden
MCDERMOTT WILL & SCHULTE LLP
444 West Lake Street
Chicago, IL 60606-0029
(312) 984-3273
mmadden@mwe.com

Respectfully submitted,

/s/ *Paul W. Hughes*

Paul W. Hughes (*pro hac vice*)
Mary H. Schnoor (*pro hac vice*)
Emmett Witkovsky-Eldred (*pro hac vice*)
MCDERMOTT WILL & SCHULTE LLP
500 North Capitol Street NW
Washington, DC 20001
(202) 756-8000
phughes@mwe.com