IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNION PACIFIC RAILROAD COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>COMMUTER RAIL DIVISION of the REGIONAL TRANSPORTATION AUTHORITY, d/b/a METRA.,<br><br>Defendant. | No. 1:25-cv-10785<br>Judge Franklin U. Valderrama |

**ORDER**

Union Pacific Railroad Company (Union Pacific) owns three rail lines connecting downtown Chicago to various points in Illinois and Wisconsin. The Commuter Rail Division of the Regional Transportation Authority, d/b/a Metra (Metra) provides commuter rail service on the three lines. The parties' relationship was governed by a Purchase and Service Agreement (PSA). Following the expiration of the PSA, Union Pacific delivered to Metra a "Condition of Entry" (COE) which set the exclusive terms and conditions under which Union Pacific was willing to allow Metra access to its rail lines to provide commuter rail service absent a negotiated agreement. Among other things, the COE doubled the compensation Metra owed Union Pacific for use of the Union Pacific Lines, relative to what Metra paid under the PSA. The COE provided that upon the first Metra train accessing Union Pacific's Rail Lines on July 1, 2025, Metra would be bound by these terms and conditions of entry. Metra has continued to use the rail lines without paying Union Pacific per the

terms of the COE. Subsequently, Metra sought—and the Surface Transportation Board (STB) granted—Metra statutory rights to use the three rail lines owned by Union Pacific and ordered the parties to negotiate compensation and conditions for Metra's use of Union Pacific's Lines. Union Pacific sued Metra seeking payment for such use. R. 1, Compl.[1] Metra moves to dismiss Union Pacific's Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1), arguing that the Complaint is a collateral attack on the STB's Order. R. 34, Mot. Dismiss. In the alternative, Metra asks the Court to stay the case. *Id.* For the reasons that follow, the motion is granted and the Court dismisses the Complaint in part and grants Metra's request to stay the remainder of the case.

## Background

Union Pacific owns three lines on which Metra provides public transportation by commuter rail in the Chicago region. Compl. ¶ 24. Union Pacific acquired these three lines after merging with the Chicago and North Western Railway Company (CNW) in 1995. *Id.* ¶ 27. Starting in 1976, CNW and then Union Pacific operated commuter rail service on Metra's behalf on these lines. *Id.* ¶ 28. Union Pacific provided service to Metra pursuant to the PSA. *Id*. Metra owned the commuter trains, while Union Pacific employees operated and maintained the commuter trains and performed administrative duties, like selling tickets and collecting fares. *Id.*

In 2019, Union Pacific informed Metra that it intended to discontinue operation of commuter rail service on these rail lines. Compl. ¶ 30. But, it encouraged

---

[1]Citations to the docket are indicated by "R." followed by the docket number or filing name, and, where necessary, a page or paragraph citation.

Metra to negotiate a resolution that would transition operation of Metra's commuter trains on Union Pacific Lines to Metra or another independent contractor. *Id*. Metra, however, was of the opinion that Union Pacific could not discontinue commuter rail service. *Id.* ¶ 31. Union Pacific then sued Metra seeking a declaratory judgment that it could stop providing commuter service for Metra. *Id.* ¶ 32. The district court held—and the Seventh Circuit affirmed—that Union Pacific could indeed stop providing commuter service. *Id*. ¶ 33 (citing *Union Pac. R.R. v. RTA*, 74 F. 4th 884 (7th Cir. 2023)).

Thereafter, the parties began negotiating a transition of commuter rail operations from Union Pacific to Metra. Compl. ¶ 34. The goal was for Metra to continue operating on the Union Pacific lines, with Metra providing the commuter rail operations directly. *Id.* As of May 16, 2025, the parties substantially completed the transition of operational responsibility for commuter rail operations from Union Pacific to Metra. Compl. ¶ 35. But the parties were still in need of a new agreement to govern their new relationship. *Id*.

The parties have tried to negotiate an agreement to replace the PSA but have been unable to do so. Compl. ¶ 36. In the meantime, the parties have repeatedly agreed to extend the PSA on an interim basis during the operational transition, with the most recent extension expiring on June 30, 2025. *Id*. Compensation has been a sticking point in the negotiations to replace the PSA. *Id.* ¶ 39. So too has

indemnification for accident liability. *See id.* ¶ 8; *see also* R. 35-1, STB Order at 32 n.65.[2]

On March 7, 2025, Metra filed an application for terminal package rights with the STB pursuant to 49 U.S.C. § 11102(a) to continue to operate commuter rail service over the three Union Pacific Lines. Compl. ¶ 46. Section 11102(a) provides that the STB may "require terminal facilities, including main-line tracks for a reasonable distance outside of a terminal, owned by a rail carrier . . . to be used by another rail carrier" if certain criteria are met. 49 U.S.C. § 11102(a). Metra's application asked the STB to "require [Union Pacific] to allow Metra to use these terminal facilities and, if necessary, establish conditions and compensation for that use." *Id.* ¶ 46. Union Pacific opposed the application. STB Order at 1.

Also on March 7, 2025, Metra sued Union Pacific in the Northern District of Illinois asserting claims for declaratory judgment of contractual obligations; declaratory judgment of antitrust violations and antitrust claims. Compl. ¶ 45 (citing *Commuter Rail Div. v. Union Pac. R.R. (Metra v. Union Pac.)*, 25-cv-2439, Dkt. 1 (N.D. Ill. Mar. 7, 2025)). Metra subsequently filed an amended complaint for declaratory judgment of no binding agreement; breach of contract; declaratory judgment of

[2]As stated in the Legal Standard Section, the Court may consider "whatever evidence has been submitted on the issue to determine whether *in fact* subject matter jurisdiction exists." *Taylor*, 875 F.3d at 853. Moreover, as Metra correctly points out, at the pleading stage, "[t]he Court may consider matters of public record," including "files of STB proceedings." Memo. Dismiss at 4 n.2 (quoting *Keokuk Junction Ry. Co. v. Toledo, Peoria & W. Ry. Corp.*, 2013 WL 5926056, at *1 (C.D. Ill. Sept. 9, 2013), *adopted in relevant part* 2013 WL 5925712 (C.D. Ill. Nov. 5, 2013)); *see also see also Ennenga v. Starns*, 677 F.3d 766, 774 (7th Cir. 2012) ("Taking judicial notice of matters of public record need not convert a motion to dismiss into a motion for summary judgment.").

contractual obligations; declaratory judgment of antitrust violations; and violation of antitrust law and injunctive relief. *Id.*, Dkt. 37.

On June 4, 2025, Union Pacific delivered to Metra a COE, which set the exclusive terms and conditions under which Union Pacific was willing to allow Metra access to its rails lines to provide commuter rail service absent a negotiated agreement. Compl. ¶ 48. Under the COE, if Metra did not abide by its terms, Union Pacific had the right to force Metra off the Union Pacific Lines. *Id.* Among other things, the COE would: double the compensation Metra owed Union Pacific for use of the Union Pacific Lines, relative to what Metra paid under the PSA (Compl. ¶ 47); impose indemnification of Union Pacific's liability on the Union Pacific Lines, even for claims from Union Pacific's own operations (R. 1-1, COE § 9); and require Metra to waive its right to a jury trial (*id.* § 12.5). The COE provided that "[u]pon the first Metra train accessing Union Pacific's Rail Lines on July 1, 2025, at or after 00:01 AM CT, Metra shall be bound by these terms and conditions of entry." Compl. ¶ 50 (quoting COE § 12.6).

On June 11, 2025, in *Metra v. Union Pac.*, Metra moved for a temporary restraining order and preliminary injunction, asking the court to enjoin Union Pacific from enforcing the COE until the dispute between the parties was resolved. *Metra v. Union Pac.*, Dkt. 43. On June 27, 2025, the court denied the motion, finding that it lacked jurisdiction as the STB has exclusive jurisdiction over the parties' dispute. *Id.*, Dkt. 64. The court also found that even if the STB did not have exclusive jurisdiction,

the court would nevertheless deny Metra's motion for injunctive relief because Metra had not shown that it will suffer irreparable injury absent injunctive relief. *Id.*

On June 30, 2025 Metra filed a petition for temporary injunction and/or *ex parte* application with the STB in which it asked the STB to enter an order maintaining the status quo that existed on June 30, 2025. STB Order at 4. Metra argued that, with no agreement in place ensuring that Metra's service on the Union Pacific Lines would continue, Metra and the public interest would be irreparably harmed. *Id.* On July 1, 2025, the STB denied Metra's emergency petition, finding that Metra had not shown the irreparable harm needed for injunctive relief or emergency circumstances permitting the STB to order service under 49 U.S.C. § 11123. *Id.*

On July 1, 2025, Metra continued to operate commuter rail service on Union Pacific Lines as usual. Compl. ¶ 56. Metra, however, did not pay Union Pacific the compensation required under the COE; instead it paid Union Pacific the amount contained in the now-expired PSA. *Id.* ¶¶ 57–60.

On September 3, 2025, the STB denied Union Pacific's motion to dismiss and granted Metra's application for terminal package rights (STB Order). On the issue of compensation, the STB punted, stating that "[b]ecause § 11102(a) provides that '[t]he rail carriers are responsible for establishing compensation and conditions for the use of terminal facilities' in the first instance, the [STB] will not address any related issues raised by the parties at this time." STB Order at 33. Similarly, the STB required the parties to negotiate as to indemnification under Section 11102(a). *Id.* at 32 n.65. The STB explained that it "expects and encourages Metra and [Union Pacific]

to undertake a converted, good faith effort to reach agreement on terms and compensation for Metra's use of the [Union Pacific] Lines. If the parties cannot reach an agreement, the [STB] will establish the compensation and conditions of use in accordance with the statute." *Id.* at 33. The STB declined to set a deadline by which the parties were to complete the negotiations and required the parties to submit either a joint status report by November 3, 2025 stating whether they had reached an agreement or needed additional time. *Id.* "If or to the extent the parties are unable to agree, either party may request the [STB] to establish compensation and/or conditions of use." *Id.* On September 9, 2025, Metra voluntarily dismissed its action pending in the Norther District of Illinois. *Metra v. Union Pac.*, Dkt. 73.

On September 8, 2025, Union Pacific filed this action seeking to collect from Metra overdue compensation owed under the COE. Compl. The Complaint also requests that the Court "declare that the COE is a valid and enforceable contract" and "that Metra is estopped from denying the COE's validity and enforceability." Compl. at 17. On October 10, Union Pacific filed a supplemental pleading regarding Metra's failure to pay the full amounts owed for August under the COE. R. 33. Metra subsequently moved to dismiss the Complaint under Federal Rules of Civil Procedure 12(b)(1). Mot. Dismiss; *see also* R. 35, Memo. Dismiss.

On September 29, 2025, Union Pacific filed a petition for review of the STB's September 3, 2025 order in the Eighth Circuit. Memo. Dismiss at 7. The same day, Union Pacific also requested that the STB impose an interim condition regarding liability and indemnity, proposing that the STB reinstate the PSA's terms relating to

those issues. *Id.* (citing R. 35-5). On September 30, 2025, the STB did so on a temporary basis (R. 35-6), and on December 2, 2025, with no objection from Metra, it held that the condition would remain in effect until final terms are established or the proceeding before the STB was otherwise resolved (R. 40-4).

On August 31, 2026, the Eighth Circuit granted in part and denied in part Union Pacific's petition. The court upheld the STB's grant of terminal package rights to Metra under 49 U.S.C. § 11102(a). *Union Pac. R.R. Co. v. Surface Transportation Bd.*, 2026 WL 2564829, at *7 (8th Cir. Aug. 31, 2026). The court, however, also concluded that the STB's pledge to set compensation at a later date did not constitute adequate security as required by § 11102 for two reasons. *Id.* at *7–9. First, the STB's pledge did not secure anything, as all it did was reiterate the STB's obligations under § 11102(a), which requires the STB to set compensation if the rail carriers cannot agree. *Id.* at *8. And second, the STB never decided how much Metra would owe Union Pacific. *Id.* The STB's decision, according to the court, violated § 11102(a)'s mandate that compensation shall be paid or adequately secured before a grantee rail carrier exercises its terminal package rights. *Id.* at *9.

The STB thereafter ordered the parties to file, by October 15, 2026, a proposal (jointly, if possible) regarding how the STB may adequately secure compensation to UP consistent with § 11102(a) and the Eighth Circuit's order, in the event compensation cannot be established by March 1, 2027." R. 60-1 at 3. The parties submitted competing security proposals to the STB by the deadline. *See* R. 62; R. 63-1.

Before the Court is Metra's fully briefed motion to dismiss the Complaint, or in the alternative to stay the case, pursuant to Rule 12(b)(1). Mot. Dismiss.

## Legal Standard

A Rule 12(b)(1) motion tests whether the court has subject matter jurisdiction. *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). In order to survive a Rule 12(b)(1) motion, the plaintiff bears the burden of establishing that subject matter jurisdiction exists. *Ctr. for Dermatology & Skin Cancer, Ltd. v. Burwell*, 770 F.3d 586, 588–89 (7th Cir. 2014). When deciding a facial challenge to subject matter jurisdiction—that is, when the defendant argues that the plaintiff's allegations as to jurisdiction are inadequate—"the district court must accept as true all well-pleaded factual allegations, and draw reasonable inferences in favor of the plaintiff." *Ezekiel v. Michel*, 66 F.3d 894, 897 (7th Cir. 1995). But district courts may also "look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether *in fact* subject matter jurisdiction exists." *Taylor*, 875 F.3d at 853 (citing *Apex Digit., Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 444 (7th Cir. 2009)). In that case, "no presumptive truthfulness attaches to plaintiff's allegations," and the court is "free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Apex Digit.*, 572 F.3 at 444 (citation omitted).

## Analysis

Before delving into the merits of the dispute, some context is required. The ICC Termination Act, or ICCTA, gives the STB exclusive jurisdiction over "transportation

by rail carriers" and the "operation" of rail "facilities" pursuant to 49 U.S.C. § 10501(b). This statute allows the STB or its predecessor, the Interstate Commerce Commission, to "require [certain] terminal facilities, including main-line tracks for a reasonable distance outside of a terminal . . . to be used by another rail carrier" if certain criteria are met. *See* 49 U.S.C. § 11102(a). The Hobbs Act provides that "a proceeding to enjoin or suspend, in whole or in part, a[n] . . . order of the [STB] shall be brought in the court of appeals" "wherein venue lies." 28 U.S.C. §§ 2321, 2342(5), 2344.

Metra argues that the Court should dismiss Union Pacific's Complaint because the question of how much Metra should pay Union Pacific for the period from July 1 to September 3, 2025, is an issue that the STB has explicitly determined is within its exclusive jurisdiction. Memo. Dismiss at 7. The STB, points out Metra, has held that Union Pacific "will be reimbursed retroactively *(from July 1, 2025)* if the interim amount paid by Metra is less than the final amount set." *Id.* (emphasis in brief) (quoting STB Order at 32). Metra argues that the "STB has exercised jurisdiction over the subject matter of this lawsuit—the amount of money Metra must pay UP for use of the UP lines from July 1 to September 3, 2025." *Id.* From Metra's perspective, Union Pacific's Complaint is a collateral attack on the STB's order. *Id.* This is so, for two reasons, asserts Metra.

First, Union Pacific's Complaint is premised on the proposition that the STB lacks authority to order relief on the question of compensation retroactive to July 1, 2025. Memo. Dismiss at 11. But, reasons Metra, because the STB has asserted that

authority and hence, jurisdiction, Union Pacific's complaint cannot succeed unless the STB was incorrect in asserting jurisdiction. *Id.* And if that is Union Pacific's challenge, asserts Metra, the only venue for that challenge is the court of appeals. *Id.* (citing, *inter alia*, *Baros v. Texas Mexican Ry. Co.*, 400 F.3d 228, 234 (5th Cir. 2005)).

Second, Metra argues that Union Pacific's Complaint contradicts relief ordered by the STB. Memo. Dismiss at 12. Metra points out that the STB Order stated that the parties were to negotiate and if necessary, the STB would set compensation retroactive to July 1, 2025. *Id.* Union Pacific, from Metra's point of view, asks the Court to disrupt that process and impose the Court, rather than the STB, as the final arbiter of compensation. *Id.* Metra posits that if Union Pacific maintains that the COE should inform the compensation due Union Pacific, then it can make that argument to the STB, as it has already done. *Id.* The fact that Union Pacific's Complaint does not ask the Court to overturn the STB's jurisdictional holding is of no moment, argues Metra; a district court lacks jurisdiction, even if the STB Order is not directly attacked, so long as the practical effect of a successful suit would contradict or countermand the STB's order. *Id.* (citing, *inter alia*, *Assure Competitive Transp., Inc. v. United States*, 629 F.2d 467, 472 (7th Cir. 1980)).

Predictably, Union Pacific sees things differently. First, from its perspective, the issues before the Court are distinct from those decided in the STB Order. That is, this case involves the parties' contractual rights and obligations between July 1 and September 3, 2025. R. 37, Resp. at 7. The STB Order on the other hand, argues Union Pacific, granted Metra trackage rights over Union Pacific's lines effective September

3, 2025, and instructed the parties to engage in good faith negotiations on terms and compensation to govern the exercise of those rights *going forward*. *Id*. It was only if those efforts fail, according to Union Pacific, would the STB step in "establish the compensation and conditions of use in accordance with the statute." *Id.* (quoting STB Order at 33). Here, Union Pacific seeks: (1) a declaration that the COE became a valid and binding contract on July 1, 2025; (2) a declaration that Metra is estopped from disputing the COE's validity, and (3) money damages based on Metra's underpayment for July and August. *Id.* at 8. Not only did the STB's Order not address any of these issues, asserts Union Pacific, but also the STB will not address them in the future because the STB's policy is to "refrain from interpreting or enforcing private contracts . . . leaving such issues to be resolved . . . in court." *Id.* (quoting *BNSF Ry.—Discontinuance of Trackage Rights Exemption—in Peoria and Tazewell Cntys., Ill.*, 2011 WL 1564711 (S.T.B. served Apr. 26, 2011)). None of the relief requested in the Complaint, posits Union Pacific, will "upset the result" of the STB Order. *Id.* As for the cases Metra cites, those cases, argues Union Pacific are not instructive and distinguishable. Resp. at 12. That is, they merely stand for the "unremarkable propositions" that "(i) a challenge to an agency's exercise of authority belongs in a court of appeals and (ii) a suit need not *directly* target an agency order to be an improper collateral attack." *Id.* (citations omitted).

Second, asserts Union Pacific, the STB did not seize control over the payment for the July 1 to September 3, 2025 period. Resp. at 8–9. Union Pacific explains that the parties did not brief and therefore, the STB did not analyze, whether it had the

power to set compensation retroactively. *Id.* And, argues Union Pacific, "'[r]etroactivity is not favored in the law,' and retroactive agency action requires express statutory authorization—which is absent here." *Id.* at 9 (quoting *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1988)). According to Union Pacific, the STB only "predicted" that, if the parties could not reach an agreement, it would set compensation for July 1 through September 3, 2025; because it has not done so, there is no order for the Eighth Circuit to "hold unlawful and set aside," so the Hobbs Act does not apply. *Id.* at 10 (quoting 5 U.S.C. § 706(2); citing *Nat'l Treasury Emps. Union v. Vought*, 149 F.4th 762, 779 (D.C. Cir. 2025) ("[A]n agency plan is unreviewable insofar as it reflects only a nonbinding statement of something the agency intends to do in the future.")).

The Court agrees with Metra that Union Pacific's Complaint, in part, is a collateral attack on the STB Order. In its Complaint, Union Pacific seeks relief that conflicts with the STB-ordered process regarding the compensation Metra owes Union Pacific. Recall that the STB Order states that the parties were to negotiate and if necessary, STB will set compensation retroactive to July 1, 2025. STB Order at 32. So, the amount of compensation that Metra will owe Union Pacific for July 1 through September 3, 2025 is indeed before the STB. Metra argues, and the Court agrees, that the STB has asserted jurisdiction over this issue as of July 1, 2025. And the STB was unequivocal: "[Union Pacific] will be reimbursed retroactively (from July 1, 2025)." STB Order at 32.

The cases cited by Metra, contrary to Union Pacific's assertion, support the finding that Union Pacific's contract claim and related state law claims are an impermissible collateral attack on the STB's Order. The Court finds *Baros* instructive, in that the Fifth Circuit found the plaintiffs' state-law claims that had the "practical effect" of challenging an "implicit decision" of the STB to be an improper collateral suit. 400 F.3d at 237. As Metra points out in reply, the court "pierced the veil of the supposedly distinct state-law theories in which the plaintiffs dressed up their claims and examined how, practically, relief in their favor would undermine the STB's approach." R. 40, Reply at 11 (citing *Baros*, 400 F.3d at 236–37). Similarly, here, by stating that it would, if necessary, determine what Metra owes Union Pacific from July 1 through September 3, 2025, the STB implicitly determined that it has jurisdiction over the issue of appropriate compensation during that period. So too is *Ry. Lab. Executives' Ass'n v. Guilford Transp. Indus., Inc.*, 989 F.2d 9, 10–12 (1st Cir. 1993) instructive. In that case, the First Circuit found that the plaintiffs' claims that the defendants abrogated their collective bargaining agreements and representation rights in violation of the Railway Labor Act via implementation of certain leases, were an impermissible collateral attack on the Interstate Commerce Commission (ICC) proceedings in which the ICC had already found that the plaintiffs who had been affected by the leases were entitled to certain benefits. *Id.* The First Circuit found that, "[b]y asking the district court to make independent findings regarding the extent of labor protection which can be reconciled with the disputed leases, they are initiating an impermissible collateral attack upon the ICC's decisions, and risking

the possibility of inconsistent judgments between this court and the Court of Appeals for the District of Columbia." *Id.* at 12 (citation omitted). Here, Union Pacific asks the Court to determine the validity of the COE, including its compensation provisions, which the STB has stated it will determine if necessary. Doing so risks the possibility of inconsistent judgments by the Court (and potentially the Seventh Circuit) and the STB (and potentially the Eighth Circuit).

As to the STB's authority to set compensation retroactively, Union Pacific is correct that the issue was not briefed by the parties. But, as stated above, the STB Order explicitly stated that it would set compensation retroactively. STB Order at 31, 32. So, if and when the STB does so, Union Pacific may raise arguments about the STB's ruling, including its exercise of jurisdiction, before the Eighth Circuit.[3] 28 U.S.C. § 2342(5); *see also* 28 U.S.C. § 2321(a). This Court is not the appropriate forum to decide the issue.

That, however, is not the end of the Court's analysis. Union Pacific insists that this case addresses an issue not before the STB: the validity of the COE's terms beyond compensation. Resp. at 15. The COE, in addition to increasing the compensation Metra owed Union Pacific for use of the Union Pacific Lines, also imposes indemnification of Union Pacific's liability on the Union Pacific Lines to Metra, even for claims from Union Pacific's own operations (Resp. at 15; COE § 9);

[3]Indeed, the Court notes that, when evaluating Union Pacific's petition for review of the STB Order, the Eighth Circuit evaluated the STB's "pledge" to "impose terms of compensation and conditions that would apply retroactively to July 1, 2025" if the parties are unable to reach an agreement, and (admittedly, without the issue being before it) said nothing about the STB's authority, or lack thereof, to make such a pledge. *See Union Pac. R.R. Co.*, 2026 WL 2564829, at *2.

and requires Metra to waive its right to a jury trial (Memo. Dismiss at 5; COE § 12.5). Union Pacific posits that, "if a Metra passenger injured between July 1 and September 3 sues Union Pacific because it owns the property where the injury happened whether Metra must defend and indemni[f]y Union Pacific will depend on the COE's validity." Resp. at 15.

Metra correctly points out that the STB Order is clear that the STB can provide guidance on such issues like indemnification if the parties ask. Reply at 15 (citing STB Order at 32 n.65). Indeed, it already has imposed conditions governing indemnity and liability going forward. *See* R. 35-6; R. 40-4. But neither Metra's memorandum nor reply address how, if at all, the STB seized jurisdiction of these issues for the period between July 1 and September 3, 2025, and thus Metra has waived the issue. *See G & S Holdings LLC v. Cont'l Cas. Co.*, 697 F.3d 534, 538 (7th Cir. 2012) ("a party waives an argument by failing to make it before the district court," including "affirmative argument[s] in support of a motion to dismiss"); *In re GT Automation Grp., Inc.*, 828 F.3d 602, 605 (7th Cir. 2016) ("An argument not responded to is ordinarily deemed waived."). And reading the STB Order's language about its retroactive application make it clear that the STB's statements about imposing retroactive conditions are limited to compensation. *See* STB Order at 31 ("[T]he [STB] pledges that, if UP and Metra cannot reach agreement respecting compensation terms, it will set appropriate terms under condemnation principles with retroactive effect, thereby satisfying the statute's adequate security

requirement."); *id.* at 32 ("[Union Pacific] will be reimbursed retroactively (from July 1, 2025) if the interim amount paid by Metra is less than the final amount set.").

Based on the arguments and authority presented before the Court, the Court cannot say that the STB has seized jurisdiction over the validity and enforceability of COE's non-compensation terms for the period between July 1 and September 3, 2025.[4]

Alternatively, Metra asks the Court to stay this case until the STB proceedings have concluded. Memo. Dismiss at 13. "The power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Texas Indep. Producers & Royalty Owners Ass'n v. E.P.A.*, 410 F.3d 964, 980 (7th Cir. 2005) (quoting *Landis v. North American Co.*, 299 U.S. 248, 254 (1936)). "In determining whether to enter such a stay, courts in their discretion have considered the following factors: (i) whether a stay will unduly prejudice or tactically disadvantage the non-moving party, (ii) whether a stay will simplify the issues in question and streamline

[4]The Court notes that the Eighth Circuit's decision could at least arguably be read to interpret the STB Order to impose retroactive conditions beyond just compensation. *See Union Pac. R.R. Co.,* 2026 WL 2564829, at *2 ("[T]he [STB] explained that it 'expect[ed] Metra to continue to compensate Union Pacific for its use' of the lines while the parties negotiated a final agreement on compensation *and use conditions*. The [STB] then 'pledge[d]' that, if parties failed to reach such an agreement, *it would impose* terms of compensation *and conditions* that would apply retroactively to July 1, 2025.") (emphases added) (quoting STB Order). The Eighth Circuit, however, only substantively addressed whether the STB's pledge to "set compensation" constituted adequate security under § 11102(a); the question of the STB's imposition of (or pledge to impose) any *other* conditions retroactively was not before the Eighth Circuit. *Id.* at *8. As discussed above, the Court reads the STB Order to only seize jurisdiction over the issue of compensation—and not over other terms at issue in the COE—for July 1 through September 3, 2025. And, even if the Court's reading of the STB Order is incorrect, Metra will not be prejudiced, given the Court agrees with Metra that a stay is warranted.

the trial, and (iii) whether a stay will reduce the burden of litigation on the parties and on the court." *Capsa Sols. LLC v. Simplifi Med., LLC*, 2024 WL 6996938, at *1 (N.D. Ill. July 29, 2024) (citations omitted).

Metra contends that because the STB has concluded that this dispute falls within its exclusive jurisdiction, this case must be stayed. *Id.* (citing *Tice v. Am. Airlines, Inc.*, 288 F.3d 313 (7th Cir. 2002)). Such a result, from Metra's perspective, furthers "judicial economy, executive-judicial comity, and deference to the STB's expertise." *Id.* (citing *Marseilles Hydro Power, LLC v. Marseilles Land & Water Co.*, 2003 WL 259142, *4 (N.D. Ill. Feb. 4, 2003)).

A stay, from Union Pacific's viewpoint, is unwarranted. Union Pacific maintains that this case and the STB proceeding "are parallel, independent parts of a broader dispute." Resp. at 13. A stay, the way Union Pacific sees it, will not obviate the Court's need to decide the contractual issue here. *Id.* Union Pacific maintains that Metra overreaches when it asserts that a stay is required as this dispute is within the STB's exclusive jurisdiction because "the issue in this case is whether the COE became a binding contract under Illinois law on July 1." *Id.* at 13–14. The STB, argues Union Pacific, has not and will not address the issue. *Id.*

The Court disagrees with Metra that the Court must impose a stay on the remaining issues of the validity and enforceability of COE's non-compensation terms for the July 1 and September 3, 2025, given that the Court has found that the STB has not seized jurisdiction over those issues. However, because indemnification—and, arguably, other terms of use, such as a jury waiver—as of September 3, 2025 *is* before

the STB, the Court agrees with Metra that a stay is warranted in the interests of judicial economy and because it will simply and streamline the issues before the Court, as the STB's decision on those issues will "bear upon the case." *Marseilles Hydro Power*, 2003 WL 259142, *4 (quoting *Levya v. Certified Grocers of Calif.*, 593 F.2d 857, 863–64 (9th Cir. 1979)); *see also Marseilles Hydro Power, LLC v. Marseilles Land & Water Co.*, 299 F.3d 643, 652 (7th Cir. 2002) ("But though there is no issue to refer to the FERC at the present time it might be a good idea for the district court to stay the lawsuit until the FERC proceeding concludes, since that proceeding may quite possibly either render the lawsuit moot (if the license is denied) except for the matter of unpaid rent, or require significant changes in the equitable relief ordered should the power company succeed in proving its case."). And the Court finds that a stay will not unduly prejudice Union Pacific, as the issues remaining in this case for the limited period of July 1 through September 3, 2025 will be addressed on a prospective basis by the STB if the parties cannot reach an agreement. Moreover, although Union Pacific speculates that the COE's validity will be at issue as to the question of indemnification if a Metra passenger injured between July 1 and September 3 sues Union Pacific because it owns the property where the injury happened, Union Pacific notably does not argue that such a suit has been brought. *See* Resp. at 15. If such lawsuit is filed, Union Pacific is free to file a motion to lift the stay.

The Court therefore exercises its discretion and grants Metra's request to stay this case.

## Conclusion

For the reasons discussed above, the motion to dismiss [34] is granted. The Court finds that the STB has seized jurisdiction over setting compensation for the period between July 1 and September 3, 2025, and thus dismisses any claims based upon that question. The Court finds that the STB has not seized jurisdiction over non-compensation terms that Union Pacific seeks to enforce and thus declines to dismiss any claims based on those terms of the COE. The Court nonetheless finds a stay is appropriate. The Court terminates Union Pacific's motion to lift the stay of discovery [57] as moot. The Court directs the parties to file a status report within 7 days of the issuance of an order by the STB, or by February 23, 2027, whichever occurs first.

DATED: October 23, 2026

United States District Judge
Franklin U. Valderrama